ARNESTAD *v.* POINT.

1. AUTOMOBILES — DEALERS — SALESMEN — INSTRUCTIONS — DEPAR-
   TURES—PROSPECTIVE PURCHASERS.

   In action by pedestrian for injuries received while dealer's car
   was being operated by prospective purchaser unaccompanied
   by salesman, finding of liability on part of dealer notwith-
   standing instructions to salesmen to accompany prospects on
   try-outs of cars *held,* proper where there were previous known
   departures from such instructions in the course of business
   (1 Comp. Laws 1929, § 4648).

2. SAME—USE OF CAR FOR DEMONSTRATION PURPOSES.

   Fact that prospective purchaser of dealer's car went after keg
   of beer *held,* not to require a finding he was not using car
   for demonstration purposes where he had secured car from
   salesman, was unaccompanied by latter and course to be taken
   by prospect was not mapped when he injured plaintiff pedes-
   trian.

3. DAMAGES—INFANTS—FRACTURED FIBULA—ABRASIONS ON FACE—
   BLACK EYE.

   In action by 18-year old boy who sustained simple fracture of
   right fibula near knee joint and had good recovery therefrom,
   abrasions on the face and a black eye and was in hospital
   for six weeks, judgment of $5,000 is reduced to $2,500 where
   he started to school six weeks after accident, since there may
   be no recovery in such action for expenses and loss of earn-
   ings.

Appeal from Gogebic; Driscoll (George O.), J.
Submitted April 22, 1937. (Docket No. 22, Calendar
No. 39,324.) Decided June 7, 1937.

Case by Wallace Arnestad, by his general guard-
ian, Ole W. Arnestad, against Walter Point, doing
business as Point Motor Sales, and others for per-
sonal injuries sustained when hit by defendant's

automobile. Judgment for plaintiff. Defendant Point appeals. Reversed and remanded with directions to enter judgment in a reduced amount.

*Ray Derham,* for plaintiff.

*Robert R. Wright (William S. Baird,* of counsel), for defendant Point.

WIEST, J. Herman Kattelus, a sales employee of defendant Walter Point, doing business as Point Motor Sales, at Ironwood, in this State, in an effort to sell an automobile, let George Setula take a car for a try-out. Setula drove the car to Hurley, Wisconsin, just across the river from Ironwood, to get a keg of beer for a party, to be held at Ironwood, in which he was interested and, while returning with the beer, the car struck plaintiff Wallace Arnestad, an 18-year old lad, who was walking along the highway, fractured his right fibula, near the knee joint, abrased his face and gave him a black eye. This suit was brought in his behalf to recover damages against the owner of the car, the driver and the sales employee. Before trial the suit was dismissed as to Mr. Kattelus, the sales employee. At the trial, before the court without a jury, plaintiff was awarded a judgment for $5,000 against Point and Setula.

Upon review defendant contends: (1) that the trial judge erred in finding that the sales employee had authority to allow Setula to drive the car, even for demonstration purposes without accompanying him; (2) in finding that the car, at the time of the accident, was being used for demonstration purposes, and also urges that excessive damages were awarded.

The negligence of Setula, the driver of the car, is not brought to review.

Was Setula driving the car with the express or implied consent or knowledge of the owner or with the consent of the owner's employee acting within the scope of his employment? 1 Comp. Laws 1929, § 4648.

Defendant Point denies liability, claiming that his sales employee let Setula take the car for a try-out, contrary to his instruction not to let persons take cars for demonstration purposes without accompanying them.

Mr. Point testified: "On December 31, 1933 (the day of the accident), Herman Kattelus was working for me and had authority to sell cars" and to let cars out for demonstration purposes if he went along but, in rare cases, leave was otherwise sometimes granted, and that previous to the accident Mr. Setula had two or three of his cars to use in trying out. He also testified:

"I sell cars myself. I do not very often turn the cars over to some prospective buyer and let him run the car himself. * * * I admit giving cars out to people without the salesman once in a great while. I give them out on rare occasions. My salesmen really haven't the authority although they do it."

Mr. Kattelus testified:

"I know George Setula. I gave him a certain car that evening to drive. The car was a Ford coupe owned by Mr. Point. I gave him that car for demonstration purposes. He had the car for demonstration purposes. I met Setula on December 31, 1933, at John Lehto's tavern at about 5:30. I says, 'George, I have just the car what you want.' He wanted to see it. He say the other cars were too big I try to sell. This was a Ford coupe. I talked it out with him and he took it out.

"*Q.* Mr. Kattelus, did you have authority from Point to let cars out like that?

"*A.* That's the only way you can sell it. When I am selling cars I have given cars like this for demonstration purposes with the consent of Mr. Point quite a few times. * * * Mr. Point hired me and gives me my orders. He gives me instructions with reference to the use of cars owned by him.

"*Q.* What are your instructions from Mr. Point—aren't you always ordered to stay with the car?

"*A.* The customers are permitted to drive the car while you are with them.

"*Q.* These are Mr. Point's instructions?

"*A.* Yes.

"*Q.* The day the accident took place and Mr. Setula took the car, you didn't go along?

"*A.* No, sir.

"*Q.* You violated instructions, didn't you, when you didn't go along?

"*A.* That's the case."

We think there was no such departure, by the sales employee from the instructions, as to relieve defendant Point from liability. The instruction, from which known departure had been permitted in the course of business, cannot be invoked by Mr. Point when a subsequent departure therefrom in the same course and by the same employee has led to the injury of an innocent person. The court was not in error in finding Mr. Point liable.

In the try-out the course to be taken by Setula was not mapped and the fact that, in the try-out, he went after a keg of beer does not require a holding that, at the time of the accident, Setula was not using the car for demonstration purposes.

Is the judgment excessive?

The physician who attended the injured boy testified:

"I saw him at the hospital and he had a fracture of the right fibula, near the knee joint; multiple abrasion to the face; he had ecchymosis of the left eye, black eye. He was in the hospital from December 31st to February 12th, and at that time he had a cast on. He was disabled about five to six months totally and he would have discomfort and pain for about an additional six months until the adjustment to his muscles and leg was completed. He could walk but he would have some pain on walking."

Also:

"This was just a simple fracture. It knit readily with a good union. There is no shortness and a complete recovery. There is no future disability at all. The leg is as good as it was before. The pain usually following a fracture lasts two and one-half to three weeks from the fracture itself. This boy started to school about five or six weeks after the accident. He was under my treatment until the latter part of March. He left the hospital February 12th. I don't think he is disabled from walking."

A physician who examined the boy March 16, 1935, testified:

"I found he had a healed fracture of the right fibula about two inches below the knee joint. It was completely healed on March 16, 1935. I took X-ray pictures of that fracture. * * * My examination of Mr. Arnestad does not show that any complications exist. In a simple fracture of this kind I have individuals go to work inside of two or three months. I would say just to give any one the benefit of the doubt that there ought to be complete healing without any discomfort to the individual in about six months. * * * After the expiration of six months there should be no further disability due to the accident. I confined my examination to his leg and back. I think he said he injured his back—he

thought he did—but I X-rayed his back and found nothing wrong with his back."

Considering the nature of the injuries, the recovery had and the fact that there can be no recovery herein for expenses or loss of earnings, because of the minority of plaintiff, we find the damages awarded so grossly excessive as to command reduction to the point of reasonable adequacy, and we determine such an amount to ·be the sum of $2,500. Therefore, the judgment is reversed and the case remanded to the circuit court with direction to enter a judgment for plaintiff for the sum of $2,500.

Defendant will recover costs of this court.

FEAD, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred. NORTH, J., did not sit.