Breeden *et ux. v.* Elliott Bros. *et al.*

*(Nashville,* December Term, 1937.)

Opinion filed July 2, 1938.

THURMAN THOMPSON, of Lewisburg, for appellants.

W. O. HAKE, of Dickson, for appellees.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

By the bill complainants seek to recover a decree for

the value of an automobile alleged to have been converted by Elliott Brothers, referred to herein as defendants. The chancellor dismissed the bill. The Court of Appeals reversed the chancellor.

The facts are that on June 11, 1932, defendants, a partnership composed of Raymond, Fletcher and Robert Elliott, automobile dealers, sold complainants a new Plymouth sedan, taking their right and title note for the unpaid purchase money in the sum of $592, payable $37 per month for sixteen months. Thereafter they negotiated the note to the W. A. Parker Finance Company, referred to herein as the Finance Company, and become bound thereon by indorsing it.

On April 3, 1933, the balance owing on said note was $294, and complainants were in default. Being unable to meet their payments, complainant, William Breeden, made an executory contract of sale of said automobile to defendants, and turned the car over to them. Under the agreement complainants were to pay the Finance Company $94, and defendants were to pay it $200. Defendants also executed to complainants a credit memorandum for $100 on a new car or $69 on a used car. Complainants failed to pay the $94, and consequently defendants did not pay the $200 to the Finance Company. The contract, therefore, was never executed. A few days later the Finance Company, without repossessing itself of the car by voluntary delivery of complainants, or by legal process, advertised said car for sale on May 1, 1933, at defendants' garage; and on that day, without the car ever having been out of the possession of defendants, sold it to Robert Elliott, a member of the firm, for $130, which was paid to the Finance Company, and defendants at the

same time delivered their check to the Finance Company for $164.

This automobile was left with defendants for the purpose of eventually concluding a sale thereof to them. And, impliedly, for its return if the sale was not consummated. This constituted a bailment.

In 8 C. J. S., Bailments, 222, section 1, it is said:

"The term 'bailment' has been variously defined. It may be comprehensively defined as a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be."

Under the repeated decisions of this court the Finance Company was unquestionably guilty of a conversion in selling this automobile without having regained possession thereof as contemplated by section 7287 of the Code. *Mitchell* v. *Automobile Sales Co.,* 161 Tenn., 1, 28 S. W. (2d), 51, 83 A. L. R., 955; *Murray* v. *Federal Motor Truck Sales Corp.,* 160 Tenn., 140, 22 S. W. (2d), 227, 23 S. W. (2d), 913; *Russell* v. *Clinton Motor Co.,* 147 Tenn., 57, 245 S. W., 529; *Southern Ice & Coal Co.* v. *Alley,* 127 Tenn., 173, 154 S. W., 536.

Defendants were just as much interested in the collection of this debt as was the Finance Company, since they were bound for any deficiency that could not be recovered from complainants. They also knew that the Finance Company had not become possessed of the automobile in the manner provided by law, and that complainants were entitled to its possession. And yet with this knowledge, and while the car was in their possession,

they permitted the Finance Company to sell the automobile wrongfully at their place of business, acquiesced in same, and even had one of the members of their firm to buy it in.

In *Murray* v. *Federal Motor Truck Sales Corporation, supra,* it is said (page 144):

" '. . . it is also well settled that by the bailment a trust is created, and the mandatory becomes the trustee, and if he violate the trust reposed in him, and dispose of the goods in a manner not authorized or contemplated by the terms of the trust, he may be held liable for a conversion, aside from the question of negligence.' *Cicalla* v. *Rossi,* 57 Tenn. (10 Heisk.), 67. See, also, *Colyar* v. *Taylor,* 41 Tenn. (1 Cold.), 372.

"It is a familiar equity rule that a trustee will not be permitted to create in himself an interest opposite to that of the *cestui que trust. Tisdale* v. *Tisdale,* 34 Tenn. (2 Sneed), 596, 64 Am. Dec., 775; 26 R. C. L., 1327."

Here the defendants were not only violating their trust, but they were present aiding and abetting the Finance Company in the conversion of complainant's automobile.

Conversion of property by a bailee may be committed in two ways: By acts in derogation of the bailor's title, or by acts in derogation of the bailor's possessory rights. 8 C. J. S., Bailments, 283, section 31. The conduct of defendants certainly brings them within this latter rule.

In 65 C. J., 65, it is said:

"A joint conversion is the single concerted act of several persons, or the result of the acts of several persons which, although separately committed, all tend to the same end. All persons engaged in a conversion are liable as principals; they are liable and may be sued jointly

or severally, provided, in case it is sought to hold them jointly liable, the conversion was joint.''

Instead of acquiescing and participating in this unlawful sale, it was the duty of defendants to notify the Finance Company that they held this automobile for complainants, and if it wished to repossess same for the purpose of enforcing its lien it would have to do so by consent of complainants or by replevin.

We think the Court of Appeals was correct in holding that the defendants and the Finance Company were joint tortfeasors, and therefore deny the writ.