Don Allen Hill, J. R. Jenkins and E. R. Sloan,

*v.*

Floyd Harrill, Administrator of the Paul Harrill
Estate and the Hugh Harrill Estate.

(*Knoxville,* September Term, 1957.)

Opinion filed December 6, 1957.

On Rehearing February 6, 1958.

124

GODDARD & GAMBLE, Maryville, for Don Allen Hill.

GODDARD & GAMBLE, Maryville, and FRANK N. BRATTON, Athens, for J. R. Jenkins and E. R. Sloan, individually, and d/b/a Jenkins Motor Sales.

Rom Meares, Maryville, for Floyd Harrill, Adm'r Estate of Paul Harrill and Estate of Hugh Harrill.

Mr. Justice Tomlinson delivered the opinion of the Court.

A passenger automobile, while being driven by Don Allen Hill on a public highway of the State, collided with one in which Paul and Hugh Harrill were riding. The one driven by Hill had attached thereto a special license plate issued under the authority of Section 59-414, T.C.A., to a partnership composed of J. R. Jenkins and E. R. Sloan, engaged in the business at Madisonville of selling automobiles under the name of J. R. Jenkins Motor Sales.

Both of the Harrills were killed as a result of the collision.

In the two tort actions thereafter maintained (and consolidated for trial) by Floyd Harrill as administrator of each of decedent's estates there was an award of damages in the amount of $25,000 and $25,400, respectively, against Hill and against Jenkins and Sloan, individually and as partners under their trade name.

The Court of Appeals affirmed as to Hill. It reversed and remanded for a new trial as to the other defendants. All parties sought *certiorari*. The writs were granted as to Harrill, Administrator, and as to Jenkins, Sloan and the partnership because this Court was uncertain as to the correct answer to the determinative questions made, and desired the benefit of oral arguments. Therefore, the writ was granted as to Hill so that all questions might be decided in one opinion.

■ There is an abundance of evidence to support the verdict of the jury, concurred in by the Trial Judge and the Court of Appeals, to the effect that the proximate cause of the collision was the negligence of Hill. Hill, however, insists that he is entitled to a new trial for each of two reasons, to-wit: (1) alleged error of the Court of Appeals in permitting an amendment to the declaration in each case by adding thereto the names of the children of each deceased as next of kin, and (2) by reason of the cross-examination of Hill with reference to what he told his lawyers as to how the accident occurred.

■ The addition of the names of additional next of kin for whose use and benefit the suits were brought "in no sense changed the cause of action which was

brought for the purpose of recovering damages for decedent's next of kin''. *Gogan v. Jones,* 197 Tenn. 436, 443, 273 S.W.2d 700, 703, and cases there cited. And it was an amendment permitted in accordance with Code Section 20-1505 providing that Courts shall have the authority to insert in the pleadings the names of plaintiffs or defendants so that the proper parties may be before the Court.

██ With reference to the insistence that what Hill told his lawyers as to how the accident occurred is privileged communcation, the fact is that Hill testified that it occurred because of the fault of some one else, and not his own fault. The special pleas did not carry an averment consistent with this particular testimony. He was asked, therefore, if he told his lawyers that to which he testified, and he replied in the affirmative. No conceivable prejudice could possibly have resulted to Hill by reason of his being asked these questions since his answer did not in any manner reflect upon him. If error, it was harmless.

Hill was a nineteen year old boy, who, along with his mother, had purchased on the installment plan a Ford car from Jenkins Motor Company and on which there was a purchase money indebtedness of $300 secured by title retained, etc. Hill had gone to the yard of Motor Sales on this day, so he says, to make a payment on this note. He saw, and became interested in, a Chevrolet automobile there. Conversation as to its purchase with the Ford as part payment was then had between Hill and Jenkins. $100 was the amount fixed as the difference between the two cars in the event of a trade. That necessitated, in the event of a trade, a new note for $400, that

being the amount still due on the Ford, plus the $100 additional to be paid in exchange for the Chevrolet.

Hill, unaccompanied, drove the Chevrolet off the lot to try it out. Upon his return in a few minutes, further conversation was followed by another try out, being accompanied this time by Jenkins. What happened upon their return is a matter as to which Jenkins and Hill disagree. Both testified, however, that as a condition precedent to a sale, Hill's mother would be required by Jenkins Motor Sales to become a party to the transaction, sign the papers, note, etc., just as she had when the Ford car was sold. This was because Hill was a minor.

Hill testified that the arrangement was:

"Well, I was going to take it home and drive it over night and let my mother see it and bring her back the next day, if I decided to trade, for her to sign for it."

He then drove it from the car lot to the home of his mother some miles away, and showed it to her. Her reaction is not disclosed by the record. Immediately thereafter Hill started to Maryville for the purpose, he says, of obtaining the opinion of a mechanic there as to the mechanical condition of the car, etc. The collision occurred before he reached Maryville.

As heretofore stated, the license plate attached to this automobile was the one authorized by Section 59-414, T.C.A., reading as follows:

"59-414. Special plates issued manufacturers, transporters and dealers.—(a) A manufacturer or dealer owning any vehicle of a type otherwise required to be registered hereunder may operate or move the same

upon any highway within the state solely for his business purposes, including transporting, testing, demonstrating, repossessing, or selling the same without registering each such vehicle upon condition that any such vehicle display thereon in the manner prescribed in sec. 59-410 a special plate or plates issued to such owner as provided in secs. 59-414—59-416.''

The Trial Judge charged the jury that the effect of this statute as to a prospective purchaser who is operating with the consent of the dealer an automobile upon the highway of the state, to which is attached this special dealer's plate, for the purpose of demonstrating that automobile to himself as a prospective purchaser, and is so demonstrating it with the knowledge and consent of the dealer, is that such prospective purchaser would be acting as the agent of the dealer while so demonstrating the car to himself; hence, that if the jury found that Hill was operating this car at the time of this collision as a prospective purchaser for the purpose of demonstrating it to himself, then the Motor Sales Company, and its partners, would be liable for the negligence of Hill; and that this partnership would likewise be so liable by reason of this statute if Hill was in possession of it for the purpose of completing the purchase with the knowledge and consent of the dealers.

The Court of Appeals held this instruction to be reversible error, saying this:

''Was this the purpose and intent of T.C.A. 59-414? It was taken from Chapter 70, Public Acts 1951, Sec. 59, which is generally known as the Tennessee Motor Vehicle and Registration Law.

"We do not find anything in the caption or other part of this Act to make such a revolutionary change in the law previously existing."

Harrill, Administrator, insists that this holding was error.

In the Michigan case of *Arnestad v. Point,* 1937, 280 Mich. 339, 273 N.W. 590, the automobile dealer had let a prospective purchaser have the automobile for the purpose of trying it out with a view of buying it. A wreck occurred while this prospective purchaser was so driving the car. There was no one in the car with him. The Court held that this was an operation of this automobile for demonstrating purposes. There is a like holding in the Minnesota case of *Koski v. Muccilli,* 1938, 201 Minn. 549, 227 N.W. 229.

Therefore, by reason of persuasive judicial authority, as well as on principle, there is no escape from the conclusion, if the testimony of Hill is to be accepted by the jury, that he was demonstrating it for the purpose of determining whether he wanted to buy it, and was doing this under the authority given him by the dealer who wanted to sell him that car.

Disregarding temporarily Code Section 59-414, the question for decision at this point is whether this made Hill, if his testimony is to be accepted, the agent or servant of the dealer in demonstrating this car to himself?

Apparently, the only Tennessee holding on the question is *Southern Motors, Inc., v. Morton,* 25 Tenn.App. 204, 210, 154 S.W.2d 801, where that Court, in a statement which may be dictum, observed that in so demonstrating the car to himself the prospective purchaser was

not representing the seller, but was only thus demonstrating it to satisfy himself as to whether he wished to make the purchase. This conclusion is, however, in accord with all the decisions. Under the heading "Vehicle operated by purchaser alone" there appears in 31 A.L.R.2d 1450 this statement of the annotator:

"An automobile dealer is not liable for injuries or damage resulting from negligence in the operation of the dealer's car by a prospective purchaser who is seeking to determine whether he will purchase such a car from the dealer."

Cases from many States, and therein cited, support the statement. 60 C.J.S. Motor Vehicles sec. 436, p. 1091 is to the same effect with many such decisions cited.

It is an inescapable fact that the dealer lets a prospective purchaser demonstrate a car to himself pursuant to an effort upon the part of the dealer to sell this car to that prospect. There is, therefore, no logical way, as the writer of this opinion views it, to escape the conclusion that such demonstration of the car is in direct furtherance of the business of the dealer, and is in operation being made by one designated by the dealer to operate the car in furtherance of that business, to-wit, the business of selling it. However, the authority to the contrary is so overwhelming and unanimous as to convince this writer that his personal view of the matter must be erroneous. This Court's opinion is that such operation of the car by a prospective purchaser, the dealer or one of its employees consenting, but not being present, is an operation by one for whose negligence the dealer is not liable, unless made so in this State by Code Section 59-414.

■ The language of this code section, considered as a whole, indicates with fair conclusiveness that the purpose of the Legislature in its enactment was to permit the special license plate to be used on any one of several vehicles in the promotion of the dealer's business without registering each such vehicle.

As this Court views it, there is nothing in this code section which permits a holding that the Legislature intended by its enactment to enlarge the responsibility or liability of a dealer in the situation presented by this case. Therefore, since prior to the enactment of this code section an automobile dealer was not liable for injuries resulting from negligence in the operation of the dealer's car by a prospective purchaser who is seeking to determine whether he will purchase such car from the dealer, no one representing the dealer being present, it must be concluded that the enactment of this code section did not make him liable in such a situation. Hence, as held by the Court of Appeals, the Trial Judge did commit prejudicial error in instructing the jury that the dealer would be liable for Hill's negligence if the jury found that Hill, as a prospective purchaser, while alone in the car, was, with the consent of the dealer, demonstrating it to himself for the purpose of determining whether he would buy it.

The Court of Appeals, after holding the Trial Court erred in the instruction given the jury as to the legal effect of Code Section 59-414, then said this:

"Consequently, although it is our opinion that the charge given constituted prejudicial error, necessitating a reversal as to the Motor Sales Company, we

think the evidence is sufficient to take the case to the jury on the retrial. This is based upon (1) the *prima facie* case created by T.C.A. 59-1038; (2) the question of whether the act of Hill in going for his mother was for the benefit of the Motor Sales Company; and (3) the presumption of legality before mentioned'',—to-wit obedience to the mandate of Code Section 59-414, heretofore quoted.

Code Section 59-1038, above referred to, provides that proof of registration in the name of the person is *prima facie* evidence of ownership of the registered motor vehicle by that person, and likewise *prima facie* evidence that it was then and there being operated by the owner or the owner's servant for the use and benefit of the owner and within the course and scope of his employment.

Jenkins and Sloan, the partners, insist that this holding of the Court of Appeals is error. This insistence is grounded on the proposition that ''the unimpeached and uncontradicted evidence'' discloses the purpose for which the possession and operation of this Chevrolet was entrusted by the dealer to Hill; hence, that ''the presumption created by Section 59-1038 vanished into thin air, and it was the duty of the Court of Appeals to direct a verdict for the petitioners in that Court''. Assuming the accuracy of the premises stated, the applicable rule is correctly stated. *Bell Cab & U-Drive-It Company v. Sloan*, 193 Tenn. 352, 356-357, 246 S.W.2d 41.

The evidence is such that one or more of four possible purposes must be found as to why this automobile was entrusted by the dealer to Hill with permission to drive it home overnight, to-wit: (1) further demonstrating it

to himself in seeking to determine whether he would buy it; (2) demonstrate it to his mother; (3) demonstrate it to his mother and bring her back the next day to sign the purchase money note and papers; (4) to bring his mother back the next day to sign the note and papers on a sale otherwise completed the day before.

If it be found that the automobile was entrusted to Hill for the purpose of further demonstrating it to himself, then the dealer is not liable for the reasons heretofore stated.

Now with reference to the other three possible purposes above mentioned, it must be recalled that Hill was not demonstrating this automobile to his mother nor bringing her back to Madisonville to sign the note and papers at the time of the collision. He was at that time driving the car from his mother's home to Maryville for a purpose of his own. He was not, therefore, on the dealer's business acting within the scope of his employment at the time of this collision. "Next, a primary condition of liability, whether the relationship be termed that of master and servant, or principal and agent, is, of course, that the servant or agent shall have been on the superior's business, acting within the scope of his employment." *National Life & Accident Insurance Company v. Morrison,* 179 Tenn. 29, 38, 162 S.W.2d 501, 504.

That which is said immediately above is likewise conclusively applicable to the observation of the Court of Appeals as to the sufficiency of the evidence to take to the jury "the question of whether the act of Hill in going for his mother was for the benefit of the Motor Sales Company". Hill was not going for his mother at the

time of this collision. He was driving the car to Maryville for a purpose of his own.

So, in any view of the matter, it is necessary to hold that there was no evidence to support the verdict against Jenkins and Sloan, individually, and as partners trading under the name of Jenkins Motor Sales; hence, that the Trial Court erred in overruling their motion for a directed verdict, and the Court of Appeals erred in not so holding.

The judgment of the Court of Appeals will be affirmed as to Hill. It will be reversed as to Jenkins, Sloan and the Jenkins Motor Sales and a directed verdict in their favor entered, and the suit dismissed as to them. All costs in the cause will be adjudged against Hill, and, as to the appellate Court costs, against the surety on his appeal bond.

### On Petition to Rehear

The petition to rehear says that the Court's "conclusion that Hill, in driving the car to Maryville, was on a mission of his own is erroneous". It concedes that "the Court's conclusion is a logical one" but says that "the inference could just as easily have been that the purpose of having the mechanic look it over was for his mother to determine whether or not she would purchase or join in the purchase of the vehicle"; that is, the automobile, according to petitioner, may be regarded as being in process of demonstration to the mother as prospective purchaser, rather than to the son while being driven by him to Maryville for inspection by a mechanic.

A demonstration by the son to his mother, as prospective purchaser, rather than to himself as such, does not

render Jenkins and Sloan any more liable than would the demonstration by the son to himself, unless the son, in so driving this automobile to Maryville, was acting as the servant or agent of Jenkins and Sloan. Apparently that is the position of petitioner.

■ This Court is very firmly of the opinion that the only fact conclusion permissible from the evidence is that young Hill was entrusted by Jenkins and Sloan with the possession of this automobile for the purpose of eventually concluding a sale thereof to him with his mother signing the purchase money note as an accommodation maker, if he decided to purchase it, and for its return if such were not done. This, in legal effect, was a bailment. In *Breeden v. Elliott Bros.*, 173 Tenn. 382, 385, 118 S.W.2d 219, 220, this Court, in describing the determinative situation there and its legal result, said this: "This automobile was left with defendants for the purpose of eventually concluding a sale thereof to them. And, impliedly, for its return if the sale was not consummated. This constituted a bailment."

Such being the ultimate fact conclusion, it is not legally permissible to hold Jenkins and Sloan liable for the negligence of young Hill. This is because "neither negligence nor, in this jurisdiction, contributory negligence of the bailee or his servants is imputable to the bailor". *Siegrist Bakery Company v. Smith*, 162 Tenn. 253, 259, 36 S.W.2d 80, 81.

In point is the Oregon case of *Kantola v. Lovell Auto Co.*, 157 Or. 534, 72 P.2d 61, annotated in 31 A.L.R.2d 1454. There, at the time of the accident, the car was "being driven by a minor who was in possession of the

car, alone, for the purpose of driving to his home in order to induce his mother to purchase it for him''. The holding was that the dealer was not liable ''since the transaction created a bailment and not an agency''.

In discussing when an automobile of a dealer was being used for demonstrating purposes we referred to the Michigan case of *Arnestad v. Point,* and the Minnesota case of *Koski v. Muccilli.* They are cases in which the car was being driven by the prospective purchaser with no representative of the dealer present. The petition comments on the fact that the dealer was held liable in each of these cases. This was because there was a statute in each of those states making the owner of an automobile liable for negligence when being driven by a third party with the permission of the owner. There is such a permissive use statute in many of the States. It seems proper to conclude that such statutes were enacted to overcome the obstacle with which the Harrills are confronted in the instant case. But, so far, our Legislature has not seen fit to enact such a law.

The petition to rehear will have to be denied.