IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 17, 2004 Session

## MARKS, SHELL, & MANESS, ET AL. v. CYNTHIA T. MANN, ET AL.

Appeal from the Chancery Court for Montgomery County
No. 98-08-0011     John H. Gasaway, III, Chancellor

No. M2002-00652-COA-R3-CV - **Filed June 23, 2004**

This cause is a civil suit for damages against Gary and Cynthia Mann resulting from Cynthia Mann's embezzlement of funds totaling $550,000.00 from the law firm of Marks, Shell, and Maness. The trial court found Mr. and Mrs. Mann jointly and severably liable for the loss. Mr. Mann appeals.[1] We affirm the ruling of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

David G. Ridings, Goodlettsville, Tennessee, for the appellants, Cynthia T. Mann and Gary J. Mann.

Roger A. Maness, Clarksville, Tennessee, for the appellees, Marks, Shell & Maness, a Tennessee general partnership consisting of Albert P. Marks, Carmack C. Shell and Roger A. Maness; and Albert P. Marks, Carmack C. Shell and Roger A. Maness f/d/b/a Marks, Shell, Maness & Marks.

**OPINION**

Appellant, Gary Mann, was married to Cynthia Mann during the 1990's, at a time when she worked at the law firm of Marks, Shell and Maness. In the late 1990's, Ms. Mann began embezzling money from the law firm. She worked on loan closings and would divert funds from the loan closings to pay towards their home equity line of credit, credit cards and other debt. Ms. Mann's theft was discovered in July of 1998. Total losses to the firm totaled over $550,000.00.

Ms. Mann pled guilty to theft of over $60,000.00 and was sentenced to eight years in prison by Judge Gasaway, the judge presiding in the civil case at bar. She has since been released on parole and is currently living with Mr. Mann, although the parties divorced in June of 2001.

---

[1] People's First National Bank and Trust Company had a deed of trust encumbering the home of Gary and Cynthia Mann on which Plaintiffs sought to impose an equitable lien, but the home was foreclosed upon by the bank and the claim against People's First Bank and Trust Company became moot.

The current action on appeal is the civil case for damages against Cynthia Mann and Gary Mann resulting from Ms. Mann's theft. After hearing testimony and receiving evidence, the trial court found as follows:

> 1. Defendant, CYNTHIA T. MANN, knowingly, willfully and fraudulently misappropriated monies from the plaintiffs' loan closing trust account resulting in a total loss to plaintiffs in the amount of $553,006.79;
>
> 2. Defendant, GARY J. MANN, knowingly, willfully and fraudulently received the economic benefit of the misappropriations by defendant, CYNTHIA T. MANN, such that he should also be liable to the plaintiffs for the total amount of their loss in the amount of $553,006.79;
>
> 3. The testimony of defendant, CYNTHIA T. MANN, and defendant, GARY J. MANN, denying that defendant, GARY J. MANN, knowingly, willfully and fraudulently received the benefit of the misappropriations by defendant, CYNTHIA T. MANN, was not credible and defendant, GARY J. MANN, had actual knowledge of those misappropriations during the time they were occurring; . . . .
>
> . . . .
>
> IT IS HEREBY ORDERED, ADJUDGED AND DECREED:
>
> 1. That plaintiffs have and recover a money judgment against defendants, CYNTHIA T. MANN and GARY J. MANN, jointly and severably (sic) in the amount of $553,006.79 together with the costs of this cause for which let execution issue if necessary; . . . .

Only Mr. Mann appeals the ruling of the trial court. He alleges, essentially, that the evidence preponderated against the finding of the trial judge against him in that there was no proof of actual knowledge by Mr. Mann of Ms. Mann's fraudulent activity. Mr. Mann also alleges that the proper standard of proof should have been clear and convincing evidence, as opposed to a preponderance of the evidence, and that the trial court erred by not disclosing to Gary Mann's attorney that he was the same judge that sentenced Ms. Mann in the criminal action. We affirm the judgment of the trial court.

The proper standard of proof required for a tort action for fraud is a simple preponderance of the evidence standard. *Estate of Acuff v. O'Linger*, 56 S.W.3d 527, 530-31 (Tenn.Ct.App. 2001); *Jarmakowicz v. Suddarth*, No. M1998-00920-COA-R3-CV, 2001 WL 196982, at *10 (Tenn.Ct.App. Feb. 28, 2001). Further, due to the nature of fraud, proof of knowledge may be made through either direct or circumstantial evidence. *Dodson v. Anderson*, 710 S.W.2d 510, 513 (Tenn. 1986); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001). We find that the trial court properly used the preponderance of the evidence standard to determine that Mr. Mann, more likely than not, had actual knowledge of his wife's fraud. The trial court also properly used circumstantial evidence in reaching its determination that Mr. Mann had actual knowledge of the fraud.

In order to attribute one spouse's fraud to the other, it must be shown that the spouse ratified the act by accepting the benefits with knowledge of the fraud.

We are of the opinion that the marital relationship alone does not render one spouse liable for the fraudulent actions of the other. *Cf. Hammond v. Herbert Hood Co.*, 31 Tenn.App. 683, 221 S.W.2d 98 (1948) (cert. denied May 6, 1949) (marital relationship alone does not supply evidence of a principal and agency relationship), *see generally* 41 Am.Jur.2d *Husband & Wife* § 436 (1968). A spouse may, however, ratify the fraudulent act of the other so as to become liable for the fraud itself by accepting or retaining the benefits of the act knowing it was tainted with fraud. *Lyons v. Jones*, 22 Tenn. App. 262, 121 S.W.2d 125 (1938) (cert. denied Oct. 22, 1938), *cf. Pratt v. Duck*, 28 Tenn. App. 502, 191 S.W.2d 562, 567 (1945) (cert. denied Dec. 1, 1945) (Principal held to have ratified unauthorized act of agent by acceptance of receipts without question), *see generally* Annot., 82 A.L.R.3d 625 (1978).

In *Lyons v. Jones, supra*, a husband and wife executed a note contemplating a legal interest rate of 6%. Subsequently, the payee, in the presence and with the consent of the husband, altered the note so as to reflect a usurious interest rate of 8%. The husband obtained the money on the altered instrument and expended it to improve the joint property of the husband and wife. The wife, who knew nothing of the alteration initially, argued that the note was voided as to her as the result of a material unauthorized alteration. The court disagreed, however, and held, "[the wife] cannot deny the agency of the husband and reap the profit of the transaction; when she retains the benefit she ratifies the acts of her husband as her agent after knowledge of the alteration." 22 Tenn. App. at 269, 121 S.W.2d at 129. We find the court's ruling in *Lyons* to be sound and clearly applicable to the case at bar.

We disagree with defendants' contention that the record is devoid of evidence demonstrating that Mrs. Anderson possessed any knowledge of the fraud perpetrated by her husband. It is well settled that any fact may be proved by either direct or circumstantial evidence, *City of Columbia v. C.F.W. Construction Co.*, 557 S.W.2d 734, 740 (Tenn. 1977), and we note that circumstantial evidence is particularly cogent in cases involving fraud. *Gibson's Suits in Chancery* § 195 (Inman 6th ed. 1982). *Cf. Seago v. Martin*, 53 Tenn. (6 Heisk.) 308, 310 (1871) (slight circumstances sufficient to raise presumption of ratification).

*Dodson v. Anderson*, 710 S.W.2d at 512-13.

This Court, in a case very similar to the one at bar, further analyzed the appropriate standard of review and elements of the claim. In the case of *H & M Enterprises, Inc. v. Murray*, No. M1999-02073-COA-R3-CV, 2002 WL 598556 (Tenn.Ct.App. April 17, 2002), defendant's wife had been working as a secretary, bookkeeper and officer manager for plaintiff company. Defendant wife was found to have embezzled money from plaintiff company and her husband was found jointly and severally liable. Although, this Court found the proof lacking in that case and reversed the trial court's judgment, we reaffirmed Tennessee Rule of Appellate Procedure 13(d) review of the trial

court's findings of fact with a presumption of correctness unless the evidence preponderates against the findings. *H & M Enterprises*, 2002 WL 598556, at *1-2. Also, with regard to the nature of the claim, this Court stated:

> H & M Enterprises' claim against Mr. Murray is essentially one for conversion. It asserted that Mr. Murray should be held jointly and severally liable for the embezzled funds because he had either conspired or personally assisted his wife in embezzling the funds or because he had "[ratified] the intentional and fraudulent actions of his wife . . . so as to establish an agency relationship," making her his agent in embezzling the company's funds. Thus, to recover from Mr. Murray, H & M Enterprises had the burden of proving each of the elements of a conversion claim. *Nunley v. Nunley*, 925 S.W.2d 538, 541 (Tenn.Ct.App. 1996).
>
> Conversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights. *Barger v. Webb*, 216 Tenn. 275, 278, 391 S.W.2d 664, 665 (1965); *Lance Prods., Inc. v. Commerce Union Bank*, 764 S.W.2d 207, 211 (Tenn.Ct.App. 1988). Conversion is an intentional tort, and a party seeking to make out a prima facie case of conversion must prove (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights. *Kinnard v. Shoney's, Inc.*, 100 F.Supp.2d 781, 797 (M.D. Tenn. 2000); *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn.Ct.App. 1977).
>
> Property may be converted in three ways. First, a person may personally dispossess another of tangible personalty. Restatement (Second) of Torts § 223(a) (1965). Second, a person may dispossess another of tangible property through the active use of an agent. *See, e.g., McCall v. Owens*, 820 S.W.2d 748, 751 (Tenn.Ct.App. 1991); 1 Stuart M. Speiser et al., *The American Law of Torts* § 3.4 (1983) ("*The American Law of Torts*") (stating that "those who ratify and adopt acts of a wrongdoer done for their benefit" may be liable). Third, under certain circumstances, a person who played no direct part in dispossessing another of property, may nevertheless be liable for conversion for "receiving a chattel." Restatement (Second) of Torts § 223(d).
>
> Two or more persons may be held jointly and severally liable for damages in tort when they intentionally unite in the wrongful act causing the injury. *Hale v. Knoxville*, 189 Tenn. 491, 502, 226 S.W.2d 265, 269 (1949). Joint and several liability may be imposed on all (1) who actively participate in the tortious acts, (2) who intentionally aid the acts, or (3) who ratify and adopt tortious acts done for their benefit. *Hux v. Butler*, 339 F.2d 696, 699 (6th Cir. 1964); 1 *The American Law of Torts* § 3.4. In appropriate circumstances, joint and several liability is appropriate for conversion claims. *See, e.g., Breeden v. Elliott Bros.*, 173 Tenn. 382, 386-87, 118 S.W.2d 219, 220 (1938).

*H & M Enterprises*, 2003 WL 598556 at *2-3.

-4-

The trial court, in the case at bar, determined that Mr. Mann "knowingly, willfully and fraudulently received the economic benefit of the misappropriations" by Ms. Mann. He further determined that Mr. Mann "had actual knowledge of those misappropriations during the time they were occurring." He, thus, knowingly received and used the stolen money, ratifying the actions of his agent, Ms. Mann. In making his ruling from the bench, the trial court stated:

> Now, with respect to whether the partners are entitled to a judgment against Gary Mann, the Court had been presented really with two contentions. The plaintiffs' contention with respect to Mr. Mann is that he had actual knowledge of the fraud that Ms. Mann was perpetrating against the plaintiffs. The plaintiffs, by law, must convince the Court that more likely than not he had actual knowledge of her fraud.

> . . . .

> And there is direct evidence and there is also circumstantial evidence. Examples of direct evidence would be, he saw the swimming pool, he saw the deck, he saw the car, he saw the wheels on the car, he saw the 52-inch TV. That's direct evidence. Is it direct evidence that he had actual knowledge?
> Well, the Court has to take the direct evidence and view it along with the circumstantial evidence. Well, what is the circumstantial evidence? These people, according to the testimony, have been married 19 years. Common sense and everyday experience tells the trier of fact that over the course of 19 years, the household business is common knowledge.
> They went from a lifestyle - - from one lifestyle to another. Their house was - - had a mortgage payment of roughly $500 a month and then went to $1,500 a month. They bought furniture, appliances, and built a deck and a pool and bought a big TV. And Mr. Mann wants the Court to believe that that didn't tip him at all. I mean, that was just business as usual apparently.
> One of the things the Court has to do in coming in and deciding a case is to, of course, judge the credibility of the witnesses, size them up, look them over, check out their demeanor, and ask themselves whether the Court believes them or not. And the law gives the Court the right to accept some, all, or none of what any witness says. The Court simply finds Ms. Mann's credibility to be - - she's just not worthy of belief.
> With respect to Mr. Mann, what he is asking the Court to believe is that when all of this was going on around him, it didn't mean anything to him. I mean, his explanation is, I never checked the mail, I never looked at the statements, I never looked at the checkbook, I never saw anything come in the house. It seemed okay with me.
> What he's asking the Court to do belies common sense and everyday experience. We're talking about - - we're not talking about a little change in things. We're talking about thousands of dollars of merchandise being brought into the

house and put into the closet. And whether they shared the closet or not, the position that Mr. Mann takes on is one that the Court finds to be incredible.

Is it more likely than not, taking everything into consideration, that Mr. Mann knew what she was doing? The Court is satisfied that he did. Judgment in favor of the plaintiffs against Mr. Mann in the same amount of money, $553,000, jointly and separately liable.

We find that the evidence does not preponderate against the findings of the trial judge. The evidence showed a significant change in the Manns' lifestyle including a significantly larger house, new furniture, and new appliances. Mr. Mann also purchased a Harley Davidson motorcycle for himself and a car for his daughter to which he added $1600 chrome wheels, a new sound system and an anti-theft system. They also paid cash for a deck and pool addition to their new home and a 52" television. Mr. Mann signed the parties tax returns and certainly knew how much money both he and his wife made. He also testified that he knew of no savings or investments, other than $26,000 in equity in their previous home, that could have paid for all these purchases.

When you look at the Manns' living expenses and their income, it becomes obvious that their expenses far outweigh their income. Mr. Mann was an independent contractor who paid his own taxes and business expenses other than gas and vehicle. In 1994, the Manns showed an adjusted gross income of $36,893.45. In 1995, their adjusted gross income was $24,182.28; in 1996, $21,509.97 (in 1996, Mr. Mann sustained a worker's compensation injury and was out of work for approximately three months drawing worker's compensation benefits); in 1997, $27,111.00, and when the theft was discovered in 1998, $33,673.00.

The Manns' had a house payment of $541 per month in 1995, but in 1996, they purchased a new home with a house payment of $1,431.47. The parties also had a $425 monthly payment for Ms. Mann's vehicle and a $300 a month payment for Mr. Mann's Harley Davidson. After moving into their home, they purchased new furniture for $3,500 in cash and a new 52" television for $1,400 in cash. They further improved the house by installing a pool for approximately $5,000 and a deck for approximately $3,000, both paid for in cash. They also purchased a vehicle for their daughter with a car payment of approximately $200 per month and, shortly thereafter, spent around $2,000 in cash installing custom wheels, a sound system, and an anti-theft system. Ms. Mann also purchased a significant amount of clothing, jewelry and other incidental items. She testified that she would occasionally bring home $800 worth of clothing in a single day. Mr. Mann, in his defense, simply stated that he didn't handle the finances, didn't know of his wife's expenditures, and thought they had sufficient money to cover their purchases. The trial court found this explanation implausible. In looking at the evidence presented, both circumstantial and direct, we do not find that the evidence preponderates against the trial court's ruling.

The court also specifically stated that neither Mr. nor Ms. Mann was a credible witness. As the trial court is able to witness a party's demeanor and testimony, the trial court is best able to determine a witnesses' credibility.

Regarding a trial court's assessment of credibility, this Court has held that:

When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position that this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn.Ct.App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id., In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

*Mach. Sales Co., Inc. v. Diamondcut Forestry Prod., LLC*, 102 S.W.3d 638, 643 (Tenn.Ct.App. 2002).

*Chadwick v. Spence*, No. W2003-00931-COA-R3-CV, 2004 WL 298367, at *4 (Tenn.Ct.App. Feb. 11, 2004). We see no evidence to dispute the court's credibility determinations.

Appellant also alleges that the trial court erred by not disclosing to counsel for Mr. Mann that the trial judge in the civil action was the presiding judge of the criminal sentencing for Ms. Mann. The implication of this allegation can only be that, had counsel for Mr. Mann known of the circumstances, he would have requested that the trial judge recuse himself. Thus, we can only find reversible error if we determine that the trial judge should have recused himself in this case. In a similar circumstance, the Supreme Court of Tennessee stated:

All litigants are entitled to the "cold neutrality of an impartial court" and have a right to have their cases heard by fair and impartial judges. *Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn.App. 1998) (quoting *Leighton v. Henderson*, 220 Tenn. 91, 414 S.W.2d 419, 421 (1967); *Chumbley v. People's Bank & Trust Co.*, 165 Tenn. 655, 57 S.W.2d 787, 788 (1933)). In general, a judge should recuse himself or herself if there is any doubt regarding the judge's ability to preside impartially or if the judge's impartiality can reasonably be questioned. *See State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995). Under Canon 3 of the Code of Judicial Conduct, a judge is required to recuse himself or herself when "the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding." Tenn.R.Sup.Ct. 10, Canon 3(E)(1)(a).

*Caudill v. Foley*, 21 S.W.3d 203, 214 (Tenn. 2000).

In this case, we see absolutely no evidence of personal bias or prejudice with regard to Ms. Mann. Mr. Mann, who knew of the judge's dealings with Ms. Mann's criminal conviction, did not even think it important enough to inform his lawyer. Further, the information known by the trial judge regarding Ms. Mann from her sentencing was public record, much of which was brought out in evidence during the course of the civil trial. The fact that Judge Gasaway determined that Ms. Mann, a confessed embezzler and accomplished liar for over three years, was not credible does not demonstrate bias, but good common sense.

The judgment of the trial court is in all respects affirmed.

_____
WILLIAM B. CAIN, JUDGE