Mrs. Gertie S. Dispeker

*v.*

The New Southern Hotel Company.

373 S.W.2d 904

(*Jackson,* April Term, 1963.)

Opinion filed December 5, 1963.

Moss & Benton, Schneider, Schneider & Harris, Jackson, George O. Benton, Victor F. Schneider, Jackson, of counsel, for complainant.

William E. Leech, Franklin Murchison, Jackson, for defendant.

Gullett, Steele & Sanford, Nashville, W. Harold Bigham, Nashville, of counsel, amicus curiae, on behalf of Tennessee Hotel Association.

Mr. Justice Felts delivered the opinion of the Court.

This suit was brought in the Chancery Court of Madison County by Mrs. Gertie S. Dispeker against The New Southern Hotel of Jackson, Tennessee, for damages to her automobile caused when its employee, then off-duty, came onto its parking lot, and wrongfully misappropriated complainant's automobile by driving it away and later wrecking it.

The Chancellor dismissed the suit. The Court of Appeals reversed and decreed in favor of complainant for the value of the automobile, less salvage value. Defendant has filed in this Court a petition for certiorari.

It appears from the Chancellor's finding of fact that on March 31, 1949, at approximately 5:10 P.M., complain-

ant and her husband, while en route from New Orleans to their home in Cincinnati, drove their Buick automobile to the front entrance of defendant's hotel to become an overnight guest of the hotel. Fred Govan, a bell boy employed by the defendant hotel, greeted complainant and her husband and assisted them in removing their baggage to an assigned room.

At the request of the complainant, Govan then drove the complainant's automobile from the front entrance of the hotel to a parking lot located in the rear of and adjoining the hotel building, which parking lot is owned by the defendant. Complainant, however, retained the keys to said automobile, the ignition on this Buick capable of being operated without the use of the ignition key. (Complainant explained to Govan that the automobile could be operated without the key, and apparently showed him how to so operate it.)

Later in the evening at approximately 7:00 P.M., complainant and her husband, while on a casual stroll, observed their automobile parked in the defendant's parking lot. This lot was outdoors and unattended and it was free to the guests. Persons having automobiles parked there had free ingress and egress and the guests could park and remove their cars at will.

The defendant hotel also had an agreement with a local parking garage located a few blocks away whereby its guests could, if they chose, store their car for a fee; but the Chancellor said there was no evidence that complainant knew of this arrangement.

After the defendant's employee, Govan, went off duty, he returned sometime that night prior to midnight to the parking lot and wrongfully appropriated complainant's

vehicle and wrecked it, thereby causing damage to the automobile. At the time Govan took the car, however, he was not acting within the scope of his employment. These are substantially the findings of fact by the Chancellor by which the Court of Appeals and this Court are bound.

On the basis of these facts, complainant sued in Chancery Court to recover from defendant the sum of $2,050.-00, the alleged damages suffered by complainant as a result of the failure of defendant to re-deliver her car.

After preliminary motions and a demurrer were overruled, all of which are irrelevant to the petition now before us, defendant filed an answer admitting that the complainant and her husband were guests of the hotel on the night in question, but denying each and every other allegation of the complaint. In addition, defendant relied on the following special defenses: (1) That the bill did not allege any negligence on the part of defendant; and (2) That any damage claimed by complainant is solely attributed to complainant's negligence.

The cause finally came to be heard in 1962 before Chancellor McLemore upon the original bill, defendant's answer, a stipulation of certain facts, depositions, and oral testimony in open court. He dismissed the case on the ground that the common law rule making an innkeeper practically an insurer of the property of its guests *"infra hospitium"* was not applicable since the automobile was outside the hotel in an open, unattended parking lot; and further, on the ground that defendant was a bailee for hire and there was no evidence to show that the removal and misappropriation of complainant's auto-

mobile was occasioned by the negligence of the defendant bailee.

Complainant perfected her appeal to the Court of Appeals, and that Court, in an opinion by Judge Bejach of the Western Section, reversed the Chancellor and held that the defendant was liable on the ground that defendant hotel was practically an insurer of the automobile of its guest. The Court of Appeals further held that the question of defendant's liability as a bailee was eliminated on appeal since no bill of exceptions was filed.

The case is here on a writ of certiorari, defendant making two assignments of error: (1) That the Court of Appeals erred in failing to dismiss the appeal of complainant because no bill of exceptions had been filed; and (2) That the Court of Appeals further erred in holding that the common law rule making innkeepers practically an insurer was applicable.

The Tennessee Hotel Association came into the case as a petitioner *amicus curiae* after the petition for certiorari was filed in this Court; and it, through able counsel, filed a brief which was duly answered by respondent.

It is petitioners' first contention that the Court of Appeals erred in denying the defendant's motion to dismiss the appeal in the absence of a bill of exceptions. They contend that, in the absence of a bill of exceptions, there is a conclusive presumption that the decree of the Chancellor was sustained by the evidence.

In *Rose v. Third National Bank*, supra, 27 Tenn. App. 553, 563, 183 S.W.2d 1, 5, the case came to the Court of Appeals without a bill of exceptions and the Court, in overruling the motion to dismiss the appeal, said:

"But this does not compel an affirmance of the chancellor's decree. It only precludes a review of the assignments of error which depend on the bill of exceptions. *We must still consider the assignments which depend upon the technical record—that is, the pleadings and minute[s] entries.*" (citing cases) (italics ours).

This Court, in *Daniel v. East Tenn. Coal Co.,* 105 Tenn. 470, 477, 58 S.W. 859 (1900), in an opinion by Mr. Justice Caldwell, said that in the absence of a bill of exceptions it is conclusively presumed in this Court that the proof before the Circuit Court justified the judgment there rendered. He relied on his prior decision in *Pratt v. Gillespie,* 97 Tenn. 217, 219, 36 S.W. 1097 (1896), where it is said:

"In the absence of a bill of exceptions showing the evidence submitted in the court below, this court presumes conclusively that it was sufficient to justify the judgment of the trial judge."

This principle was approved by Mr. Justice Tomlinson in *Freeman v. Freeman,* 197 Tenn. 75, 82, 270 S.W.2d 364, 367, (1954), where he said:

"And there being no bill of exceptions, and *no error appearing in the technical record,* there arose a conclusive presumption that the decree of the Chancellor is correct" (italics ours).

It is true that a paragraph in Mr. Justice Prewitt's opinion denying certiorari in *Spivey v. Reasoner,* 191 Tenn. 350, 352, 233 S.W.2d 555, 556 (1951), tends to support petitioner's contention. There, the case was heard in the Chancery Court on the pleadings, oral testimony, a

stipulation of certain facts, and exhibits, and went to the Court of Appeals in the absence of a bill of exceptions. Mr. Justice Prewitt concluded his opinion by saying:

> "The Court of Appeals was correct in holding that it had no power to review the complainant's assignments of error, and in the absence of a bill of exceptions, there is a conclusive presumption that the Chancellor's findings and decrees based on these matters were correct. *Rose v. Brown,* supra."

Although the case seems to say that both the Chancellor's finding of fact and decrees on questions of law are conclusive on appeal, this was not intended as is shown by the later case of *Findlay v. Monroe,* 196 Tenn. 690, 693, 270 S.W.2d 325 (1953).

There, although not citing it, Mr. Justice Tomlinson correctly interprets the language of *Spivey v. Reasoner,* supra. He said:

> "Where there is no bill of exceptions it will be presumed on appeal that the evidence supports the facts as found by the Trial Judge in his signed and filed opinion. * * * *This, of course, does not mean that the conclusions of law which a Trial Court reaches from that finding of fact must be assumed to be correct"* (italics ours).

Thus, on appeal, the Court of Appeals could properly review on the merits any question of law decided by the Chancellor. This, of course, would include the question of whether, under the facts as found by the Chancellor, the defendant hotel was liable on the ground that an innkeeper is practically an insurer of the goods of its guests which are *"infra hospitium."* Therefore, the first assignment is without merit, and must be overruled.

Petitioners' second and last assignment of error is that the Court of Appeals erred in holding that defendant was practically an insurer of the automobile of its guests parked on a parking lot outside the confines of the hotel. They insist, among other things, that this common law rule is inapplicable in the instant case because the automobile was not *"infra hospitium"* but was outside the inn on an open, unattended parking lot.

■ As we view the case, however, it is unnecessary to decide the question raised by this assignment of error. While it is true that we are conclusively bound by the Chancellor's finding of fact that there was a bailment for hire and no evidence of negligence on the part of defendant, this does not mean that the question as to defendant's liability for a breach of contract of bailment is eliminated on appeal. We think that this is a question of law which the appellate court may properly review even though no bill of exceptions has been filed. *Findlay v. Monroe,* supra, 196 Tenn. 690, 693, 270 S.W.2d 325.

It is true that in this state a bailee's liability has generally been predicated on negligence rather than breach of contract. *Dickerson v. Rogers,* 23 Tenn. 179 (1843); *Kallisk, for Use and Benefit of United States Fire Ins. Co. v. Meyer Hotel,* 182 Tenn. 29, 184 S.W.2d 45, 156 A.L.R. 231 (1943). This does not mean, however, that negligence must be shown in order to permit a recovery from a bailee.

■ Generally speaking, a bailment relation is a contractual arrangement which may result from a contract implied in law or in fact; and the essential feature of such a contract is the agreement to return the subject matter, either on demand or at the stipulated time, or in

case return is not made, to account for the property to him from whom the bailee has received it. 8 Am. Jur. 2d 951, Bailments, sec. 43.

■ This Court has said that a bailment is a delivery of personalty for a particular purpose or on mere deposit, on a contract express or implied; that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, or otherwise dealt with according to his direction or kept until he reclaims it. *Breeden v. Elliott Bros.,* 173 Tenn. 382, 118 S.W.2d 219 (1937).

■ We have also said that a bailee for hire in this State promises to put the bailed property to no other use than that for which it was hired; to use it well; to take care of it; *to restore it at the time appointed;* to pay the rent or hire; and finally, in general, to observe whatever is prescribed by the contract of bailment, by law, and by custom. *Bell v. Cummings,* 35 Tenn. 275, 286 (1855); see also, Story on Bailments, Sec. 397.

■ It is true that in an action *ex contractu,* where the bailor relies on an ordinary contract of bailment without predicating his right of recovery upon the bailee's negligence, the bailor makes out a prima facie case of breach of contract when he shows delivery of the article to the bailee and the bailee's failure to return it in good condition on demand or as agreed on; and the bailee may escape liability only by affirmatively showing that his failure to redeliver was without his fault. *Revenue Aero Club v. Alexandria Airport,* (1951), 192 Va. 231, 64 S.E. 2d 671; *Giles v. Meyer,* (1952), 62 Ohio 536, 107 N.E.2d 777, 779.

■ Apparently, however, in the case of misdelivery, absolute liability is placed on the bailee regardless of neg-

ligence. In the latest edition of American Jurisprudence, it is said:

"It is uniformly held that a delivery of bailed property by the bailee to one not the true owner and not authorized by the bailor to receive it is, of itself, a conversion and breach of the contract of bailment for which the law imposes an absolute liability upon the bailee for loss or damage occasioned thereby, irrespective of the fact that he may have acted in good faith and without negligence, and even though the misdelivery was the result of innocent mistake or was induced by fraud or trick." Am, Jur. 2d 1057-58, Bailments, Sec. 167.

In *Potomac Ins. Co. v. Nickson,* 64 Utah 395, 231 P. 445, 42 A.L.R. 128 (1924), the Supreme Court of Utah reviewed the cases on misdelivery by a bailee and quoted from 3 R.C.L. 116, sec. 35, as follows:

"But it must be borne in mind that a misdelivery by a bailee, though he acts in good faith and may be said to be without fault, furnishes no legal excuse for a failure to make a return, as such an act is a departure from the terms of the bailment contract, and so makes the bailee liable therefor, irrespective of negligence."

The Court of Appeals of Georgia, in passing upon the same question of the liability of the bailee for misdelivery of property left in his care, said:

"It appears that the defendant failed to hold the property as he promised to do for the estate, but turned it over to one not authorized by the administrator to receive it. When defendant did this he subjected himself to liability for the loss occasioned by a breach of

the contract." *Darling v. Purdom,* 14 Ga. App. 597, 598, 81 S.E. 800, 801 (1941).

The holding of the Missouri Court of Appeals, in the case of *Murray v. Farmers' & Merchants' Bank,* Mo. App., 206 S.W. 577 (1918), was correctly stated in the headnote as follows:

"Where [the] bailee delivers the property deposited to [a] person other than [the] bailor, he determines the right of such person to the bailment at his peril and is liable for wrongful delivery, regardless of negligence."

■ Moreover, it has been held that the bailee, charged with the duty to deliver the property to no one but the bailor or someone authorized by him to receive it, cannot escape his liability on the ground that a servant left in charge of the property, in permitting the unauthorized person to take it, was acting beyond the scope of his employment. *McLain v. West Virginia Auto. Co.,* 72 W.Va. 738, 79 S.E. 731 (1913).

In the instant case when complainant turned her automobile over to defendant's servant for safekeeping, the bailment for hire contract was impliedly created, defendant bailee promising to redeliver the vehicle in reasonably good condition on the demand of complainant, or to her order, and to no one else. To do that was just as much a part of the contract of bailment as if it had been solemnly written out and signed by both parties. *Potomac Ins. Co., v. Nickson,* supra, 64 Utah 395, 231 P. 445, 42 A.L.R. 128.

It was only through defendant's unfortunate choice of employee that the automobile was damaged. Thus, when

the automobile was turned over to Govan, then off-duty, an act quite analogous to misdelivery took place, imposing absolute liability upon the bailee for the loss or damage occasioned thereby.

Therefore, we hold that the defendant hotel is liable for misdelivery and the law will not inquire whether it did so in good faith or through negligence or otherwise. The writ is denied.