John B. Scruggs, III, Petitioner,

*v.*

Ray Dennis and Monroe Carrell, dba Central Parking System and Downtown Municipal Garage, Respondents.

440 S.W.2d 20.

(*Nashville,* December Term, 1968.)

Opinion filed April 18, 1969

DON L. SMITH, Nashville, for petitioner; MANIER, CROUCH, WHITE & HEROD, Nashville, of counsel.

R. G. LAZENBY, JR., Nashville, for respondents; GLAS-GOW, ADAMS, & TAYLOR, Nashville, of counsel.

MR. JUSTICE CRESON delivered the opinion of the Court.

By writ of certiorari heretofore granted, petitioner John B. Scruggs, III seeks review of a judgment of the Court of Appeals, Middle Section, which reversed a judgment of the Second Circuit Court of Davidson County.

This case was originally tried in the General Sessions Court of Davidson County. Petitioner sought damages for breach of a bailment contract allegedly created when petitioner left his car in the respondents' "Downtown Municipal Garage." A judgment for petitioner was entered in the amount of $906.41. Respondents appealed to the Circuit Court of Davidson County.

716

The case was there tried de novo, without intervention of a jury, and a judgment for petitioner for $921.65 was entered. Respondents appealed to the Court of Appeals, Middle Section, which reversed the judgment of the Circuit Court and dismissed the case.

The evidence heard in the Circuit Court was the testimony of the petitioner and of the respondent, Monroe Carrell, together with certain exhibits filed by petitioner.

Petitioner had begun the practice of parking his automobile in respondents' garage, and done so daily for five or six months prior to the occurrence giving rise to this case. On March 6, 1967, petitioner entered respondents' garage and took a "ticket" which was automatically dispensed by machine. Petitioner drove his automobile to the underground third level of the garage, where he parked it. Petitioner retained the ignition key to his vehicle. When he returned to retrieve his automobile in the afternoon, it had disappeared with a person or persons unknown. The vehicle was recovered by the police more than two weeks later and returned to the petitioner in a damaged condition.

The garage operated by the respondents is located between Fourth and Fifth Avenues, near the Municipal Auditorium, in Nashville, Tennessee. It contains approximately 500 parking spaces distributed on three floors, or parking levels. The main floor is at street level and the remaining parking areas are underground.

During normal business, the garage may be entered by either of two entrances, but only one exit is used. During periods of heavy traffic, both entrances are kept open and two exits are provided for more rapid departure. As a general rule, three or four attendants or

"cashiers" work at the garage; but the number of employees frequently totals five, according to the exigencies of demand.

As indicated above, during normal operation operators of motor vehicles entering the garage receive a "ticket" from a machine upon entry into the garage. These "tickets" bear a serial number and a stamped notation of the precise time of entry. After receiving a "ticket," drivers move their vehicles to a parking space of their own choice and leave them there. Generally, the driver retains both the ticket and the ignition key to his vehicle. Drivers return directly to their cars and drive them to the exit where they pay a "cashier" an amount based upon the time elapsed since entry. Both driver and vehicle are then free to depart. Attendants working in the garage do not generally operate vehicles left there, but sometimes do. The tickets dispensed by machine provide no means of identifying or connecting a particular driver with his vehicle.

The garage is equipped with an "internal communications system" which enables attendants in the business office to hear sounds coming from any part of the garage, including elevators and stairways.

Petitioner has filed two assignments of error, as follows:

"1. The evidence preponderates against the judgment of the Court of Appeals in reversing the trial court.

2. The Court of Appeals erred as a matter of law in its conclusion that a bailment did not exist."

The above-quoted assignments of error, the briefs and the record, itself, reveal that this case turns upon solu-

tion to the question of whether or not a bailment is to be implied from the relationship between the parties.

This Court has defined a bailment as:

"\* \* \* a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be."

*Hunt-Berlin Coal Co. v. McDonald Coal Co.* (1928), 148 Tenn. 507, 256 S.W. 248; and *Breeden, et ux v. Elliott Bros., et al.* (1937), 173 Tenn. 382, 118 S.W.2d 219.

Counsel for respondents brief and argue cases from other jurisdictions largely on a basis that they find the reported decisions of this Court differ factually from the instant case. The Court of Appeals cites and relies upon *Wall v. Airport Parking Company of Chicago* (Ill.1967), 88 Ill.App.2d 108, 232 N.E.2d 38; and *1420 Park Road Parking, Inc. v. Consolidated Mutual Insurance Company* (D.C.Mun.App. 1967), 168 A.2d 900.

It is true that the authorities generally disclose minute factual differences; but a close examination of those cited much more significantly reflects a difference in the legal principles applied to what constitutes a bailment relationship, as well as the rules with respect to performance compared to those which prevailed in Tennessee.

It seems to be on the aforementioned basis that the Court of Appeals seeks to distinguish the instant case and that decided in *Dispeker v. New Southern Hotel Company* (1963), 213 Tenn. 378, 373 S.W.2d 904. There

are some minute differences of fact, but there is assuredly none in the principles of bailment law so beautifully carved in that opinion written for this Court by Mr. Justice Felts, one of Tennessee's truly eminent jurists.

If anything, the confidence reposed by the bailor in that case, without any definition whatever of understanding concerning the relationship of the parties to the open storage of Dispeker's car, has somewhat less basis for the implication of status there enforced than does what occurred in the instant case.

 The relationship created by what occurred in the case at bar is pointedly summarized in that opinion:

"It is true that in an action *ex contractu,* where the bailor relies on an ordinary contract of bailment without predicating his right of recovery upon the bailee's negligence, the bailor makes out a prime facie case of breach of contract when he shows delivery of the article to the bailee and the bailee's failure to return it in good condition on demand or as agreed on; and the bailee may escape liability only by affirmatively showing that his failure to redeliver was without his fault. *Revenue Aero Club v. Alexandria Airport* (1951), 192 Va. 231, 64 S.E.2d 671; *Giles v. Meyers* 1952), 62 Ohio Law Abst. 558, 107 N.E.2d 777, 779.

Apparently, however, in the case of misdelivery, absolute liability is placed on the bailee regardless of negligence."

(Op. pp. 387-388, 373 S.W.2d p. 909)

\* \* \* \* \* \*

"Moreover, it has been held that the bailee, charged with the duty to deliver the property to no one but

the bailor or someone authorized by him to receive it, cannot escape his liability on the ground that a servant left in charge of the property, in permitting the unauthorized person to take it, was acting beyond the scope of his employment. *McLain v. West Virginia Auto Co.*, 72 W.Va. 738, 79 S.E. 731 (1913).

In the instant case when complainant turned her automobile over to defendant's servant for safekeeping, the bailment for hire contract was impliedly created, defendant bailee promising to redeliver the vehicle in reasonably good condition on the demand of complainant, or to her order, and to no one else. To do that was just as much a part of the contract of bailment as if it had been solemnly written out and signed by both parties."

(Op. p. 389, 373 S.W.2d p. 909)

■ We find no digression whatever in the Tennessee authorities from the principles of the law of bailments so well enunciated in the case last cited. Indeed, it is our view that to embrace the theory of respondent garage in this case would be tantamount to nothing more or less than condonation of a reduction of storage operation for hire to a subterfuge.

We are thus constrained to reverse the judgment of the Court of Appeals and affirm that of the trial court. Costs of the cause are assessed to the respondents.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.