**John Randolph CLARKE, Petitioner-Appellant,**

v.

**W. S. NEIL, Warden, Tennessee State Penitentiary, Respondent-Appellee.**

No. 19579.

United States Court of Appeals,
Sixth Circuit.

June 12, 1970.

Charles Galbreath, Nashville, Tenn., James H. Bateman, Nashville, Tenn., on the brief, for appellant.

James C. Dale, III, Special Counsel, Nashville, Tenn., David M. Pack, Atty. Gen., of counsel, for appellee.

Before EDWARDS, PECK and Mc-CREE, Circuit Judges.

PECK, Circuit Judge.

This is the second appeal in this habeas corpus case. In the first appeal this Court reversed and remanded in part the District Court's denial without an evidentiary hearing of appellant's petition for the writ (Clarke v. Henderson, 403 F.2d 687 (6th Cir. 1968)). Most of the facts reported in the prior opinion in this case need not be repeated here, but in the interest of clarity some repetition together with a statement of facts as found on remand will be necessary.

Appellant was convicted of the first degree murder of an 18 year old girl in Tennessee state court. His conviction was affirmed on appeal by the Supreme Court of Tennessee (Clarke v. State, 218 Tenn. 259, 402 S.W.2d 863 (1966), cert. denied, 385 U.S. 942, 87 S.Ct. 303, 17 L. Ed.2d 222 (1966)).

The murder for which appellant was convicted took place on a Saturday night. Appellant was first interrogated by the police as a possible suspect on the Monday evening following the murder. During the course of the interview the police learned from the appellant that he had taken a dark suit to the cleaners that same day. The police had previously learned through investigation that a struggle had preceded the killing and that the killer had been wearing a dark suit, and while appellant was being interviewed, the police learned from his wife that he had been wearing the dark suit on the day of the murder.

Based on this information the police contacted the manager of the cleaning shop to which appellant had taken his suit and informed the manager that they wished to examine it. The manager expressed a willingness to cooperate with the police and sent the service manager to meet the police and open the shop for them, it then being approximately 10:00 p. m. With the service manager's assistance the police located appellant's suit and took it, giving the service manager a receipt therefor.

Appellant challenges the legality of this search and seizure because, although there was a magistrate available from whom a search warrant could have been obtained, no warrant was obtained by the police prior to the search and seizure. While the suit itself was not introduced into evidence at the trial, an FBI expert testified that laboratory examination had revealed the presence on the suit of certain fibers matching those in the murder victim's clothing. Therefore the admissibility of this testimony, as of the suit itself, depends on the legality of the underlying search and seizure. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 391–392, 40 S.Ct. 182, 64 L.Ed. 319 (1920); Maxwell v. Stephens, 348 F.2d 325, 328 (8th Cir.), cert. denied, 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353 (1965); McGinnis v. United States, 227 F.2d 598, 603 (1st Cir. 1955).

The remand in the first appeal of this case was found to be necessary to permit the District Court to more fully develop the record concerning the search and seizure and to give the District Court an opportunity to evaluate the search and seizure in light of the standards set forth in Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), which abolished the long-standing absolute prohibition against the seizure of items having evidential value only, often called the "mere evidence" rule. More significant to the issues presented here, however, is the test set down by the Supreme Court in *Hayden* to determine whether the seizure of "mere evidence" is justified. *Hayden* holds that "mere evidence" can be seized pursuant to a lawful search if the police have probable "cause to believe that the evidence sought will aid in a particular apprehension or conviction." 387 U.S. at 307, 87 S.Ct. at 1650.

■ Thus a court passing on the validity of a search and seizure involving "mere evidence" is faced with two separate but related questions. The first is whether the search itself was lawful. If the answer to that question is in the affirmative, the second question is whether the authorities had the requisite probable cause to justify the seizure.

In this case the answer to the first question is clearly in the affirmative. Appellant does not contend that the manager of the cleaning shop had no authority to consent to the police search of the premises or that his consent was not voluntarily given. Therefore the search itself was unquestionably lawful.

■■ The second question was specifically posed to the District Court upon the remand of this case: "Was there 'cause to believe that the evidence sought will aid in a particular apprehen-

sion or conviction'? Warden, Md. Penitentiary v. Hayden, supra, [387 U.S. 294] at 307, 87 S.Ct. 1642." 403 F.2d at 689.[1] The District Court concluded that the facts known to the police, namely, that a struggle had preceded the killing, that the perpetrator was wearing a dark suit, and that appellant, who was a suspect, had worn a dark suit the day of the murder and had, the same day as his questioning by the police, taken the dark suit to the cleaners, gave the police probable cause to believe the suit would aid in a particular apprehension or conviction. Having thus concluded that the search of the premises was made lawful by the manager's consent and that the seizure of the suit was supported by the requisite probable cause, the District Court held the seizure lawful.

We hold that the District Court's application of the *Hayden* standards was clearly correct, and our conclusion as to the correctness of that result is strengthened by the recent United States Supreme Court decision in Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). In *Frazier* the defendant and his cousin were joint users of a duffel bag. In the course of an arrest of the cousin in the defendant's absence, the police obtained the cousin's consent to search the duffel bag. While searching the bag the police came upon some of defendant's clothing, seized it and introduced it as evidence against him in a subsequent trial. The Supreme Court held that the cousin's consent to the search of the bag made the search lawful as to the defendant, and that since the evidence was found in the course of an otherwise lawful search, the police were permitted to seize it so long as the seizure was supported by the probable cause standards of *Hayden*. 394 U.S. at 740, 89 S.Ct. 1420. Here, as in *Frazier*, the suit was found in a

---

1. In answer to the question, "Did the government show a 'valid claim of superior interest'? Warden, Md. Penitentiary v. Hayden, *supra* at 303, 87 S.Ct. 1642", the District Court correctly concluded that a "valid claim of superior interest"

on the part of the police is no longer necessary to legitimize the seizure of "mere evidence" incident to a lawful search. Warden, Md. Penitentiary v. Hayden, *supra* at 303, 87 S.Ct. 1642.

search made lawful by proper consent thereto, and the seizure of the suit was supported by the requisite probable cause to believe that it would aid in a particular apprehension or conviction.

Appellant alternatively argues that the search here must be viewed as a search of the suit itself rather than as a search of the cleaner's premises. Appellant's contention is that while the manager of the cleaning shop may have had authority to consent to a search of the premises where the suit was found, he had no authority to consent to a search of the suit itself, and that absent exigent circumstances dispensing with the need to obtain a warrant, the warrantless search of the suit itself was unlawful. Appellant relies heavily on Corngold v. United States, 367 F.2d 1 (9th Cir. 1966), where a warrantless search of sealed packages, although with the consent of the bailee of the packages, was held to be unlawful.

■ This argument is rejected. We do not consider the laboratory examination of a suit after its seizure by the police to constitute a search within the meaning of the Fourth Amendment, and we therefore find the *Corngold* case factually inapposite. Even assuming the search here could be viewed as a search of the suit itself, we must conclude that such a search would not be violative of appellant's Fourth Amendment rights. The Supreme Court has instructed, "the principal object of the Fourth Amendment is the protection of privacy rather than property. * * *" Warden, Md. Penitentiary v. Hayden, *supra*, 387 U.S. at 304, 87 S.Ct at 1648, and further, "What a person knowingly exposes to the public * * * is not a subject of Fourth Amendment protection. [Citing cases.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. [Citing cases.]" Katz v. United States, 389 U.S. 347, 351–352, 88 S. Ct. 507, 511, 19 L.Ed.2d 576 (1967). Thus our question becomes whether the appellant can be said to have sought to "preserve as private" the matter contained on the suit even after the suit was delivered to the cleaners. It is interesting to note in this regard that the impelling rationale of Corngold v. United States, *supra*, was that the defendant did not lose his right of privacy with respect to the contents of sealed containers merely by placing those containers in the hands of a bailee for purposes of shipment. That determination, which was consistent with the principles outlined above, was clearly correct since the mere act of placing the items in sealed containers shows an intent to retain a right of privacy with respect to them. But the same cannot be said in the present case. Here appellant delivered the suit to the cleaners open to public view. He knew that the suit could be handled and examined by many persons in the course of the cleaning process, but he in no way tried to conceal the suit or anything contained thereon, nor did he try to restrict the number of persons who handled it. We are therefore unable to find any significant invasion of anything which appellant sought to "preserve as private."

The remaining issues can be quickly disposed of. Because of certain allegations by appellant's counsel in the first appeal of this case, this Court directed the District Court to allow appellant an opportunity to amend his petition to allege a claim of newly discovered evidence. Upon remand the District Court permitted appellant to amend his petition to present his claim of newly discovered evidence and also permitted him to allege that he was not fully advised of his rights and that he was denied permission to contact an attorney during his initial interview with the police. The District Court found, however, that the evidence presented at the hearing failed to support appellant's claim of newly discovered evidence as well as his claims that the police failed to advise him of his rights and refused him permission to contact an attorney. The District Court further found that appellant had failed to exhaust his state court remedies with respect to these last two

issues. Upon review of the record we have determined that the District Court's findings in this regard were not clearly erroneous.

The judgment of the District Court denying the petition for the writ is affirmed.

McCREE, Circuit Judge (dissenting).

I dissent. Initially, I disagree with the majority's characterization of the facts surrounding the police officer's seizure of petitioner's suit. The majority states that "With the service manager's assistance the police located appellant's suit and took it, * * *" However, the District Judge found that "The suit was located and freely surrendered by the manager of the laundry."[1] This difference is significant.

Warrantless searches or seizures are the exception, not the rule.

"Over and again this Court has emphasized that the mandate of the [Fourth] Amendment requires adherence to judicial processes," United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59, and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

One established exception is that a warrantless seizure is permissible if it is consented to by a proper party. Frazier v. Cupp, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). The majority holds that this exception is applicable here because the manager had authority to consent to a search of his premises by the police. However, according to the District Judge, there was no search of the premises conducted by the police. The manager located the suit and surrendered it to the police officers pursuant to their request. Accordingly, the issue is not whether the manager could consent to a search of his premises, but whether he had the authority to locate petitioner's suit and to surrender it to the police. I would hold that he did not.

At the outset, "It is important to bear in mind that it was the petitioner's constitutional right which was at stake here, * * * It was a right, therefore, which only the petitioner could waive by word or deed, either directly or through an agent." Stoner v. California, 376 U.S. 483, 489, 84 S.Ct. 889, 893 (1964). The District Judge concluded that petitioner, in effect, waived his Fourth Amendment rights and authorized the manager to consent to the seizure of the suit when he voluntarily presented the suit to the cleaner knowing that it could be examined by many people during the cleaning process. The District Judge considered this conduct by petitioner a voluntary abandonment of petitioner's right of privacy with regard to the suit.

The difficulty with this approach is that it fails to recognize that a person, by his conduct, may relinquish a quantum of his "constitutionally protected reasonable expectation of privacy," Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 516 (Harlan, J., concurring), without relinquishing all of it. Thus, a person who engages a hotel room relinquishes a quantum of privacy and impliedly authorizes such persons as maids and repairmen to enter his room in order to perform their duties. He does not, however, relinquish his privacy to the extent of impliedly authorizing a

---

[1]. That the phrase "by the manager" refers both to the act of locating the suit and to the act of surrendering it is made clear from the factual conclusions expressed by the District Judge in his first opinion prior to this court's remand. In the earlier opinion, the District Judge stated: "The service manager was able to locate the suit of clothing * * * and turned it over to the police receiving a receipt therefor."

night clerk to permit the police to enter the room so that they may search it. Stoner v. California, 376 U.S. 483, 84 S. Ct. 889 (1964). *See also,* Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). Similarly, one who entrusts a package to an airline for the purpose of transporting it to another destination may expressly authorize the airline to inspect the package, but this authorization would not give the airline the right to consent to a search of the package by government agents. Corngold v. United States, 367 F.2d 1 (9th Cir. 1966). Also, an employee enjoying an exclusive right to use a desk assigned to her impliedly authorizes her superiors to explore the desk for the purpose of obtaining office property needed for office use, but does not authorize them to consent to a police search for the fruits of a crime. United States v. Blok, 88 U.S.App.D.C. 326, 188 F.2d 1019 (1951).

I would hold that one who gives a suit to a cleaner for the purpose of cleaning it impliedly authorizes examination of the suit by those persons connected with the cleaning process, but does not relinquish his privacy to the extent of authorizing the manager of the cleaning establishment to locate the suit and to surrender if to the police pursuant to their request. This activity went beyond petitioner's "constitutionally protected reasonable expectation of privacy" with regard to the suit. Katz v. United States, *supra.*[2]

Furthermore, I do not think any of the other "specifically established and well-delineated exceptions" to the requirement that a warrant be obtained prior to a search or seizure are applicable here. The warrantless seizure was not made incident to a lawful arrest, Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), nor was it required by the "exigencies of the situation." McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948). *See* Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L. Ed. 436 (1948). Indeed, the parties stipulated that a magistrate was available at the time the officers departed in order to accomplish the seizure.

Since no exception to the requirement that a warrant be obtained is applicable, I would find the seizure illegal under the Fourth Amendment. Moreover, in light of the trial court's statement that the seizure produced "some very damaging evidence against defendant," Clarke v. State, 218 Tenn. 259, 402 S.W.2d 863, 870 (1966), I would not consider the admission of the suit harmless error under the rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See also,* Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L. Ed.2d 284 (1969). I would therefore vacate the judgment and order the petitioner to be discharged unless retried within a reasonable time.

EDWARDS, Circuit Judge (concurring).

I concur fully in Judge Peck's opinion. But in view of the dissent, I would like to add a few words about this interesting Fourth Amendment problem.

The facts which Judge Miller found after a full evidentiary hearing seem to me to warrant the view that there was a search and seizure under police authority. When a businessman at police request opens his place of business in the nighttime and, with police personnel present, looks for and finds and turns

---

2. To the extent that property considerations may still be relevant in this context, Katz v. United States, 389 U.S. 347, 350 n. 4, 88 S.Ct. 507 (1967), as a bailee, the cleaner had no authority, express or implied, to deliver petitioner's property to a third party; and this is irrespective of the absence of the imposition of any "specific restrictions" by petitioner. A bailor does not have to expressly prohibit misdelivery of his goods. Indeed, under Tennessee law, a bailee subjects himself to absolute liability when without authority he delivers the bailor's goods to a third party. *See* Dispeker v. New Southern Hotel Co., 213 Tenn. 378, 373 S.W.2d 904 (1963).

over to them an article of clothing, it seems to me that the search should be regarded as police action. The finding of the District Judge that "the suit was located and freely surrendered by the manager of the laundry" simply makes conclusive the voluntary consent to police search of the premises and seizure of the suit on the part of the owner of the premises, and the person in lawful possession of the suit.

Such consent is, of course, one of the established exceptions to the requirement of a judicially issued warrant. Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Nelson v. California, 346 F.2d 73 (9th Cir. 1965); Simmons v. Bomar, 349 F.2d 365 (6th Cir. 1965).

The police right to seize the suit does not rest upon "proof of a superior property interest." It rests upon "cause to believe that the evidence sought will aid in a particular apprehension or conviction." Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). I agree with Judge Peck and the District Judge that there clearly was such cause in this case. (See Appendix A.) Not only was the police entry on the premises wholly lawful, but I am also unable to find in this record any invasion of appellant's right of privacy. Certainly in placing this suit in a channel of commerce where it was bound to be seen and handled by many persons, appellant made no attempt to retain privacy. He certainly did not employ the sealed container used for that purpose in Corngold v. United States, 367 F.2d 1 (9th Cir. 1966).

What we have left then is whether or not valuable evidence of a crime may be seized in the midst of a wholly lawful search. The Supreme Court has recently answered this question affirmatively in the two cases cited in Judge Peck's opinion. Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642 (1967), and Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420 (1969). *See also* Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

The opinion for the Court in *Frazier* said:

"Petitioner's final contention can be dismissed rather quickly. He argues that the trial judge erred in permitting some clothing seized from petitioner's duffel bag to be introduced into evidence. This duffel bag was being used jointly by petitioner and his cousin Rawls and it had been left in Rawls' home. The police, while arresting Rawls, asked him if they could have his clothing. They were directed to the duffel bag and both Rawls and his mother consented to its search. During this search, the officers came upon petitioner's clothing and it was seized as well. Since Rawls was a joint user of the bag, he clearly had authority to consent to its search. The officers therefore found evidence against petitioner while in the course of an otherwise lawful search. Under this Court's past decisions, they were clearly permitted to seize it. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Petitioner argues that Rawls only had actual permission to use one compartment of the bag and that he had no authority to consent to a search of the other compartments. We will not, however, engage in such metaphysical subtleties in judging the efficacy of Rawls' consent. Petitioner, in allowing Rawls to use the bag and in leaving it in his house, must be taken to have assumed the risk that Rawls would allow someone else to look inside. We find no valid search and seizure claim in this case." Frazier v. Cupp, *supra*, 394 U.S. at 740, 89 S.Ct. at 1425.

APPENDIX A

In the record at appellant's state court trial (which was before the District Judge and is before us), one of the witnesses testified as follows:

Q. 61. I'll ask you specifically if you saw the defendant on the evening of Feb-

ruary the 22nd of this year?

A. I did.

Q. 62. And, where were you at that time?

A. I was at Ruth's Diner.

Q. 63. And, about what time was it?

A. It would be about 6:30.

Q. 64. Did you arrive first or—

A. I mean 7:30.

Q. 65. Did you arrive first or did the defendant arrive first?

A. I got there and he was talking on the telephone when I got there.

Q. 66. And, what did you do when you got there?

A. Well, he usually drank a quart bottle of Budweiser, and I saw one sitting on the bar, so I sat down close to it, and he got off the phone and came over and moved his beer over next to me, and we started talking.

Q. 67. And, about how long did you talk?

A. Oh, about 20 minutes I would say.

Q. 68. Do you recall seeing anybody else there that night?

A. Well, there was Ruth—.

Q. 69. Who is Ruth?

A. The owner, Ruth Cullen.

Q. 70. I see, and what was the nature of your conversation, Mr. Baker?

A. Well, after John Clarke got off the telephone, he said that he was just talking to a Freshman at U.T. who was here in Nashville visiting, or staying with her mother, and that he had invited himself over with some beer, a six pack I believe he said, and that he had known the mother of this girl—

Q. 71. In what connection?

A. In that he had had sexual relations with her.

Q. 72. And what, if anything, did he tell you about his intentions of going there?

A. Well—

MR. GALBREATH: If the Court please, we object to leading.

THE COURT: I don't think that's leading, let him answer.

A. Well, he said that he phoned under the pretence of—to see the girl's mother, and that he invited himself over to bring some beer to wait for the mother, and he said that he was going to try to make sexual advances toward the daughter, and if he couldn't then he would wait for the mother.

Q. 73. I see, now, when did you read about this killing in the newspaper?

A. That would be Sunday morning about 11.

Q. 74. And, about what time did Mr. Clarke leave there, leave Ruth's that night?

A. Well, I drank one beer and got up to leave, and he left just before I did, it would be about 8 o'clock.

Q. 75. How was he dressed, Mr. Baker, that night?

A. As I remember he had on a dark coat and dark pants.

Q. 76. What, if anything, did you do when you saw this article in the paper the following day?

A. Well, I read through it, and it kind of clicked in my mind, but, the article in the paper said that it was an 18 year old U.T. coed, whereas, he had mentioned the fact that she was a Freshman.

Q. 77. Yes, sir?

A. And, it also did not give the caliber of the gun used as a 32 automatic, which I remembered that John Clarke did have this 32 Beretta.

Q. 78. And, did you later see another article?

A. Yes, that night I read a later edition of the paper, and this told that it was a 32 automatic, and that the girl was a Freshman.

Q. 79. What did you do then?

A. Well, that night I phoned police headquarters for a Nashville officer, McAron.

Q. 80. And, did you give him this information?

A. No, he was out, and so then I went home and went to bed—

\* \* \* \* \* \*

A. —and so, anyway, I went to sleep that night and the next afternoon about 2:30 I phoned police headquarters and arranged a contact with McAron,—McAron and John Dodson at King's Inn, and we—I told them what I knew.