**Daniel F. GRUENDER,**
**Plaintiff-Appellant,**

v.

**E.G. HOLT, Southeastern Representatives and Associates, Cherokee Aviation Corporation, Aviation Unlimited, Defendants-Appellees.**

**No. 82–5012.**

United States Court of Appeals,
Sixth Circuit.

Argued March 30, 1983.

Decided Aug. 12, 1983.

Rehearing Denied Sept. 1, 1983.

Don C. Stansberry, Jr. (argued), David C. Andrew and Richard E. Herod, Huntsville, Tenn., for plaintiff-appellant.

Earl R. Layman (argued), Key, Lee & Layman, Knoxville, Tenn., W. Conway Garlington, Knoxville, Tenn., David B. Maxwell

(argued), Seveirville, Tenn., for defendants-appellees.

Before KENNEDY, MARTIN and WELLFORD, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

This is an appeal from an action for damages related to the leasing of an aircraft and its subsequent bailment for repairs. Federal jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332(a)(1) and (C), and Tennessee law applies. A magistrate tried the case without a jury and determined that defendants E.G. Holt and Southeastern Representatives were liable to Gruender for breaching the lease agreement. However, the magistrate dismissed Gruender's claims against Cherokee Aviation Corporation and Aviation Unlimited. The sole issue on appeal is the propriety of dismissing defendants Cherokee Aviation and Aviation Unlimited.

The general factual background of the case is not disputed. In June, 1980, E.G. Holt, a partner of Southeastern Representatives, leased Gruender's aircraft on behalf of his partnership. Holt then subleased the plane to William Wellons in violation of the lease agreement. In early October, 1980, Gruender travelled to West Palm Beach to recover his aircraft which had been confiscated by local drug enforcement authorities. The craft had been modified and had suffered substantial damages from its use in illegal drug trafficking activities.

The aircraft was delivered to Cherokee Aviation in Knoxville, Tennessee for repairs. Gruender instructed Cherokee's General Manager that Cherokee was not to relinquish possession of the plane to anyone other than himself. Nonetheless, in Mid-November a Cherokee employee towed the plane to a neighboring hanger leased by Aviation Unlimited. Aviation flew the plane to Indiana for radio repairs at William Wellons' request, and returned the plane to Cherokee's ramp in Knoxville approximately one week later. On December 1, 1980, one week after its return to Cherokee, the aircraft was stolen. The stolen plane was recovered in Livingston, Tennes-see on February 19, 1981 having suffered additional damages and depreciation.

Gruender sued Cherokee and Aviation for damages to the plane resulting from its theft. He makes three arguments on appeal, all of which revolve around the bailment contract between Gruender and Cherokee Aviation. First, Gruender argues that Cherokee Aviation as bailee is absolutely liable for the "misdelivery" of the airplane to the thief. In the alternative, Gruender claims that Cherokee is liable for the theft damages because it was negligent in protecting the aircraft. Finally, the plaintiff contends that Aviation should be held jointly liable for the theft damages because Aviation appropriated the plane in violation of the bailment contract and never properly redelivered the plane to Cherokee.

██ A bailee is required to exercise ordinary and reasonable care of the bailed object under the circumstances and deliver it at the bailor's direction. *Jackson v. Metropolitan Government of Nashville,* 483 S.W.2d 92, 95 (Tenn.1972). The rule is well established that the bailee is absolutely liable for misdelivery of the bailor's property. *Dispeker v. New Southern Hotel Company,* 213 Tenn. 378, 373 S.W.2d 904, 909 (1963), *quoting* Am.Jur.2d 1057–1058. Bailments, § 167. Even where there has been no misdelivery, the bailee will be liable for failure to deliver the property to the bailor. However, the bailee may escape liability by showing it is without fault in failing to deliver. *Jackson,* 483 S.W.2d at 95.

Gruender relies on two cases for the proposition that the bailee is strictly liable for the theft of bailed property. In *Dispeker v. New Southern Hotel Co.* an off-duty employee stole the plaintiff's car from the hotel lot and wrecked it. The Tennessee Supreme Court found the hotel strictly liable for the actions of its employee on a "misdelivery" theory. The court relied on cases arising in other states which involved the actual misdelivery of bailed property. In *Scruggs v. Dennis,* 222 Tenn. 714, 440 S.W.2d 20 (1969), the state supreme court found parking lot owners strictly liable for

misdelivering the plaintiff's car to a thief. The thief removed the car from the garage by presenting a parking ticket to the cashier. To support its holding, the court relied on *Dispeker* despite obvious factual differences.

In recent decisions, Tennessee courts have focused not on misdelivery but instead on failure to deliver as agreed upon. The bailee will be held liable for failing to deliver the bailed property unless it can show affirmatively that it was not at fault. In *Jackson v. Metropolitan Government of Nashville, supra,* the plaintiff parked his car in an attended parking lot. When he returned, the parking lot was unattended and his car had been stolen by an unknown thief. The Tennessee Supreme Court cited *Dispeker, supra,* but held the defendant bailee liable because he had made no affirmative showing that the failure to deliver the property was without his fault. *Jackson,* 483 S.W.2d at 95. In *Mathews v. Cumberland Chevrolet Co.,* 640 S.W.2d 582 (Tenn.App.1982) the defendant garage had accepted the plaintiff's truck for repairs. The truck was left overnight in the defendant's locked garage with the keys in the ignition. The garage was burglarized and the truck stolen by unknown thieves. The appellate court affirmed the trial court's holding that the defendant had failed to demonstrate that it was not responsible for failing to deliver the truck. The failure-to-deliver standard appears to have been applied in *Allen v. Hyatt Regency-Nashville Hotel,* 7 Tenn.Atty. Memo 46–3 (No. 82–116–II) (Tenn.App. Oct. 19, 1982), although the Tennessee court did not discuss the defendant bailee's fault for the failure to deliver.

In the present case, a thief stole Gruender's plane from the Cherokee ramp. The fact that Cherokee failed to deliver the plane establishes a prima facie case of negligence against Cherokee. Tenn.Code Ann. § 24–5–111 (1980). However, evidence in the record shows that Cherokee was not responsible for the theft, that is, that Cherokee exercised reasonable care under the circumstances to protect the plane. Cherokee secured the plane, both before and after Aviation Unlimited's possession, by tying it down, chocking the wheels, locking the cabin, and removing the keys. A chain link fence secured the area surrounding the plane and police systematically patrolled the area. Admittedly, the plane was not secured by a propeller lock; however, that precaution was used only to enforce mechanics' liens. Cherokee used the same care to protect Gruender's plane that it would use for any other plane. Therefore, we conclude that Cherokee used reasonable care to protect the plane and we find that Cherokee was not at fault for contributing to the theft. *Jackson v. Metropolitan Government of Nashville.*

Gruender argues that Cherokee should have used special, extraordinary care to secure his plane from theft. Gruender arranged with Cherokee's general manager to have the plane repaired. He explained the "history" of the plane, told the manager what repairs were necessary, asked for an assessment of damages for litigation purposes, and instructed the manager "not to let anybody have the equipment [i.e. the plane]." The pilot who delivered Gruender's plane to the night clerk asked him to "secure" it and *assumed* that the clerk knew the plane required the protection of a hangar. These facts do not support Gruender's contention that Cherokee should have known the plane would be stolen. Cherokee was not notified to take special precautions to guard the plane from future theft. Furthermore, the fact that Mr. Holt had a set of keys to the plane is not chargeable to Cherokee; Gruender has not shown that Cherokee relinquished its keys to Holt. Gruender cannot now claim Cherokee failed to secure the plane properly under the circumstances when he failed to inform Cherokee of the special circumstances, that the plane was likely to be stolen again.

We now turn to Gruender's claim against Aviation Unlimited. Aviation can be liable only for damages resulting from its possession of the plane. Aviation possessed the plane for one week and returned it in an improved condition. Although Avi-

**48**

ation's possession violated Cherokee's contract with Gruender, no damages occurred during Aviation's possession. The damages of which Gruender complains occurred one week after Aviation relinquished possession of the plane to Cherokee. We decline to hold Aviation liable for the theft damages when it had no control over the plane and no opportunity to protect itself from the liability Gruender would thrust upon it.

Judgment affirmed.