# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

**FILED**

**December 30, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

FREDDIE STEWART,                    )
                                    )
      Plaintiff/Appellant,          )
                                    )
                                    )
                                    )   Davidson Circuit
VS.                                 )   No. 94C-3724
                                    )
                                    )   Appeal No.
HCA HEALTH SERVICES OF              )   01A01-9603-CV-00111
TENNESSEE, INC. d/b/a               )
CENTENNIAL MEDICAL CENTER           )
                                    )
      Defendant/Appellee.           )


APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE THOMAS W. BROTHERS, JUDGE


For Plaintiff/Appellant:

John K. Maddin, Jr.
MADDIN, MILLER & McCUNE
Nashville, Tennessee

For Defendant/Appellee:

C.J. Gideon, Jr.
William S. Walton
GIDEON & WISEMAN
Nashville, Tennessee


## AFFIRMED AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

# OPINION

This case involves the theft of a motorcycle from a hospital parking garage. The visitor whose motorcycle was stolen filed a bailment action against the hospital in the Circuit Court for Davidson County. The hospital moved for summary judgment on the ground that no bailment was created. The trial court agreed and summarily dismissed the case. The visitor asserts on this appeal that the trial court should not have granted the summary judgment because the record contains material factual disputes concerning the existence of a bailment. We find that the material facts are not in dispute and that a bailment was not created as a matter of law. Accordingly, we affirm the summary judgment.

## I.

Fred Stewart began traveling between Cookeville and Nashville in June 1994 to visit his mother who was hospitalized at Parkview Hospital. On June 25, 1994, he drove to Nashville on his 1982 Harley Davidson motorcycle and parked the motorcycle in the hospital's multi-floor garage where parking was provided to the public at no charge. Mr. Stewart planned to leave his motorcycle in the garage for several days because he intended to stay in the hospital with his critically ill mother.

The garage where Mr. Stewart parked his motorcycle is open from 6:00 a.m. to 12:00 midnight. It has a single entrance and exit and is surrounded by a chain link fence. The entrance and exit is not controlled, although a security kiosk located there is manned part-time. Persons may drive their vehicles into and out of the garage at will without presenting any type of receipt or ticket, even when an attendant is in the security kiosk. A sign posted at the garage's entrance informs patrons that "[t]his facility only provides parking space. The facility does not provide safe keeping for your vehicle or its contents (including radar detectors, car phones, and sound systems). We will not be responsible if your car or contents are stolen or damaged."

Mr. Stewart returned to his motorcycle on several occasions on June 25 and 26, 1994 to retrieve items from his saddlebags. When he went out to the garage at approximately 8:00 a.m. on June 27, 1994, he discovered that his motorcycle was

missing. He promptly reported the theft of his motorcycle to hospital security personnel who summoned the police.

When the motorcycle was not recovered, Mr. Stewart filed suit against HCA Health Services, Inc. ("HCA"), the owner of Parkview Hospital, alleging that he had entrusted his motorcycle to HCA when he parked it in the garage, that HCA had failed to return his motorcycle to him, and that he was entitled to recover $20,000 in damages for the loss of his motorcycle. HCA moved for a summary judgment on the ground that the only conclusion to be drawn from the undisputed facts was that Parkview Hospital did not have a bailment relationship with Mr. Stewart. The trial court agreed and on December 21, 1995, entered an order summarily dismissing Mr. Stewart's complaint.

## II.

We begin by restating the now familiar principles governing summary judgments. A summary judgment is appropriate only when there are no material factual disputes with regard to the claim or defense embodied in the motion and when the party seeking the summary judgment is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). A party may obtain a summary judgment if it can demonstrate that the nonmoving party will be unable to prove an essential element of its case, *see Byrd v. Hall*, 847 S.W.2d 208, 212-13 (Tenn. 1993), because a failure of proof concerning an essential element of a cause of action necessarily renders all other facts immaterial. *See Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993).

A decision granting a summary judgment enjoys no presumption of correctness on appeal. *See Carvell v. Bottoms*, 900 S.W.2d at 26; *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 733 (Tenn. Ct. App. 1996). Rather, reviewing courts must make a fresh determination concerning whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hembree v. State*, 925 S.W.2d 513, 515 (Tenn. 1996); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). In doing so, we must view all the evidence in the light most favorable to the non-moving party, and we must also draw all reasonable inferences from the undisputed evidence in the non-moving party's favor. *See Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.

1997); *Heath v. Creson*, 949 S.W.2d 690, 691 (Tenn. Ct. App. 1997). A summary judgment should be affirmed only if the undisputed facts and conclusions reasonably drawn therefrom support the conclusion that the moving party is entitled to a judgment as a matter of law. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## III.

Mr. Stewart's success at this juncture depends on his ability to prove that a bailment with regard to his motorcycle existed between him and HCA. He is not required to present proof that HCA was negligent because, under Tenn. Code Ann. § 24-5-111 (1980), the failure to return bailed property constitutes prima facie evidence that the bailee was negligent as long as the loss was not caused by the nature of the property itself.

## A.

A bailment, in essence, is the delivery of personal property to another accompanied by an agreement by the person receiving the property to return it to the person who delivered it. *See Rhodes v. Pioneer Parking Lot, Inc.*, 501 S.W.2d 569, 570 (Tenn. 1973); *Breeden v. Elliott Bros.*, 173 Tenn. 382, 385, 118 S.W.2d 219, 220 (1938). It is a contractual arrangement, and the contract may be either express or implied from the conduct of the parties. *See Dispeker v. New Southern Hotel Co.*, 213 Tenn. 378, 386, 373 S.W.2d 904, 908 (1963); *Jernigan v. Ham*, 691 S.W.2d 553, 556 (Tenn. Ct. App. 1984). If the person receiving the property, the bailee, fails to return the property when requested or to demonstrate that it was not at fault for losing the property, the person delivering the property, the bailor, is entitled to a judgment for the value of the property. *See Crook v. Mid-South Transfer & Storage Co., Inc.*, 499 S.W.2d 255, 260 (Tenn. Ct. App. 1973); *Cook & Nichols, Inc. v. Peat, Marwick, Mitchell & Co.*, 480 S.W.2d 542, 544 (Tenn. Ct. App. 1971).

The most essential ingredient of any bailment claim is delivery. In the bailment context, "delivery" connotes the bailor's act of relinquishing possession and control over the personal property to the bailee. In order for the relinquishment to amount to a "delivery," it "must be a full transfer, either actual or constructive, of the

property to the bailee so as to exclude it from the possession of the owner and all other persons and give to the bailee, for the time being, the sole custody and control thereof." *Rhodes v. Pioneer Parking Lot, Inc.*, 501 S.W.2d at 570; *see also Merritt v. Nationwide Warehouse Co.*, 605 S.W.2d 250, 253 (Tenn. Ct. App. 1980).

The application of bailment principles to "park and lock" cases such as this one have proved troublesome for the courts. *See Allen v. Hyatt Regency-Nashville Hotel*, 668 S.W.2d 286, 288 (Tenn. 1984). However, rather than applying other principles, the Tennessee Supreme Court has squarely held that bailment principles continue to be "the most satisfactory and realistic approach to the problem." *Allen v. Hyatt Regency-Nashville Hotel*, 668 S.W.2d at 288. Thus, the pivotal inquiry in cases of this sort continues to be whether the bailor has sufficiently delivered possession and control to create a bailment. *See Allen v. Hyatt Regency-Nashville Hotel*, 668 S.W.2d at 289. Without delivery, there is no bailment but rather a mere license to park or a lease of a parking space. *See Rhodes v. Pioneer Parking Lot, Inc.,* 501 S.W.2d at 570.

The Tennessee Supreme Court's decisions finding a bailment to exist involve circumstances where the garage or parking lot charged a fee or exercised actual control over the vehicle in some fashion. *See Allen v. Hyatt Regency-Nashville Hotel*, 668 S.W.2d at 290 (hotel charged a fee and exercised control over vehicles entering or leaving the garage); *Jackson v. Metropolitan Gov't of Nashville*, 483 S.W.2d 92, 94-95 (Tenn. 1972) (teachers charged a fee for parking on high school property); *Scruggs v. Dennis*, 222 Tenn. 714, 716-17, 720, 440 S.W.2d 20, 21, 23 (1969) (garage charged a fee and controlled the ability to leave); *Dispeker v. New Southern Hotel Co.*, 213 Tenn. at 389, 373 S.W.2d at 909-10 (hotel charged a fee and required patrons to turn their vehicles over to a bellboy). In the one case where the Tennessee Supreme Court did not find a bailment, the parking lot was unattended, and, while a fee was charged, no one exercised control over vehicles entering or leaving the parking lot. *See Rhodes v. Pioneer Parking Lot*, Inc., 501 S.W.2d at 571.

**B.**

Mr. Stewart has the burden of proving all "the legal requirements of the traditional bailment for hire." *Allen v. Hyatt Regency-Nashville Hotel*, 668 S.W.2d at 290. Accordingly, he bears the burden of proving delivery. In order to overcome

a summary judgment motion, Mr. Stewart must demonstrate that he will be able to prove at trial that he delivered his motorcycle to Parkview Hospital in circumstances that would enable a finder of fact to conclude that an implied bailment was created. If he cannot demonstrate that he will be able to prove delivery of his motorcycle, he is faced with the summary dismissal of his suit.

In order to determine whether Mr. Stewart delivered his motorcycle to Parkview Hospital, we must consider the undisputed facts concerning the configuration of the parking garage, the conduct of Parkview Hospital's employees, and Mr. Stewart's own actions. Parkview Hospital permitted anyone to park in its garage for free and did not undertake to control access to the garage. Hospital employees did not supervise the vehicles entering or leaving the garage and did not undertake to maintain the security of the vehicles parked in the garage. Mr. Stewart did not interact with any hospital employees when he parked in the garage, and in fact, there is no evidence that any hospital employee even knew that he was parking there. He parked where he pleased; he had complete, unrestricted access to his motorcycle; and he kept his own keys.

We must view the undisputed facts objectively just as the finder of fact would rather than from Mr. Stewart's subjective point of view. In light of these facts, Mr. Stewart's bailment claim is weaker than the claim dismissed by the Tennessee Supreme Court in the *Rhodes v. Pioneer Parking Lot, Inc.* case. No implied bailment for hire could have been created because Parkview Hospital did not charge Mr. Stewart to park in its garage and because Mr. Stewart never delivered his motorcycle into the hospital's custody or control. There is simply no evidence in the record that Parkview Hospital ever undertook to exercise actual or constructive control over Mr. Stewart's motorcycle. Without control, there can be no delivery; and without delivery, there can be no bailment. Since there is no bailment, Mr. Stewart cannot take advantage of the presumption in Tenn. Code Ann. § 24-5-111.

### IV.

We affirm the summary judgment dismissing Mr. Stewart's claim against HCA and remand the case to the trial court for further proceedings consistent with this opinion. We also tax the costs of this appeal to Freddie Stewart and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

-7-

_____
SAMUEL L. LEWIS, JUDGE


_____
 BEN H. CANTRELL, JUDGE