## PEERLESS DRY CLEANING CO. v. MRS. J. C. CARMACK:

Eastern Section. April 7, 1928.

Petition for Certiorari denied by Supreme Court, June 16, 1928.

104

W. E. Wilkerson, of Chattanooga, for plaintiff in error.
W. G. M. Thomas, of Chattanooga, for defendant in error.

PORTRUM, J. Mrs. Carmack started this suit before a Justice of the Peace against the Peerless Dry Cleaning Company, to recover for damage sustained to a valuable fur coat entrusted to the cleaners to cleanse and return. The warrant charges:

"For a consideration defendant accepted and contracted and agreed to clean her lamb, blue fox trimmed, coat but negligently and wrongfully ruined and destroyed it, and refused to pay therefor, to her damage."

The case was carried to the circuit court where it was heard by the Circuit Judge, without the intervention of a jury, and a judgment of $150 entered in favor of the plaintiff, and from which judgment an appeal was prosecuted to this court. The error assigned is that there is no evidence to support the judgment.

The law in reference to bailments and the burden of proof is stated as follows:

"In some of the older decisions it was held that the loss or injury raised no presumption of negligence. The bailee is not an insurer of the goods, and when they are lost or damaged, it was said that the law which never presumes any man negligent would rather attribute the loss to excusable causes. It was not enough for plaintiff to prove the loss or injury, but it was held that he must go further and must show that the same had occurred by defendant's negligence.

"Modern rule. The rule adopted in the more modern decisions is that the proof of loss or injury establishes a sufficient prima-facie case against the bailee to put him upon his defense. Where chattels are delivered to a bailee in good condition and are returned in a damaged state, or are lost or not returned at all, the law presumes

negligence to be the cause, and casts upon the bailee the burden of showing that the loss is due to other causes consistent with due care on his part. But if the possession of the bailee has not been exclusive of that of the bailor, the rule does not apply. In order to throw the burden of evidence upon the bailee it is sufficient that the bailor has shown damage to the bailed article that ordinarily does not happen where the requisite degree of care is exercised. . . . The presumption arising from injury to the goods or failure to redeliver is sufficient to satisfy this burden and make out a prima-facie case against the bailee; but the bailee may overcome this presumption by showing that the loss occurred through some cause consistent with due care on his part, in which case he is entitled to a verdict unless the bailor affirmatively proves to the satisfaction of the jury that the loss would not have occurred but for the negligence of the bailee.'' Bailments, 6 C. J. Sections 159-160. The modern rule is applied in a great majority of the states of the union, and will be adopted as the rule of law in the instant case.

The plaintiff in error, Peerless Dry Cleaning Company, insists that the uncontradicted proof establishes the fact that it used ordinary care in cleaning this article of apparel, and nothing more is required of it. If this is true, then there is no evidence to support the verdict.

The defendant in error, Mrs. Carmack, introduced a witness, a salesman by the name of Ike Nesanowitz who represented the firm of Weinstein & Samuels, of New York City, who had sold the coat to the local dealers, Schwartz Brothers, and who in turn sold it to the customer, Mrs. Carmack. He qualified as an expert upon furs and said the coat was known as an American broadtail and advertised and sold as a lamb, blue fox trimmed, coat to retail at a price between $450 to $495. Mrs. Carmack bought the coat at a sale for $375. The coat was made of so-called South American lamb skins, and is referred to as having been ''built'' because of the fact that the skin was pieced together of pieces cut from the sides of the so-called lambs, in dimensions of about eighteen inches square, though the pieces were seldom square. In other words, the curl of the wool was more perfect on the side of the lamb and this curl was cut away in pieces according to the curl of the wool and matched together, making a large piece from which the coat was made. These skins are bought in South America and shipped to New York to A. Holloman, who shears the skins, dries and dyes them, and he has control of the entire output for this particular skin. The skin is not in fact a lamb skin but is taken from sheep from one to two years of age and the trimming is not of blue fox but is dyed squirrel. The blue fox and South American lamb are said to be trade names and not representative of the quality of the article. This witness testifies that the identical coat was sold by him to the local dealer and was a perfect coat. He says that he has ex-

amined the article since it was cleaned by the cleaner, and he gives it as his opinion that the skin has been ruined by acid used in the cleaning. He said that the skin was peeling and showed a thousand cracks or breaks and that the coat was worthless. He further testified that coats made of this skin were often cleaned by the cleaners in the city of New York, and the process used had never injured the coats. He admits that he is not a cleaner and does not know the correct method for cleaning but he says that pure gasoline would not injure the skin as this skin was injured.

The coat was introduced and Mrs. Carmack testified the coat was in good condition but very dirty when she sent it to the cleaner and when it was returned it was in the condition as shown upon the trial. She called the manager's attention to the condition of the coat immediately. This was the evidence adduced in favor of the plaintiff.

· The defendant introduced several witnesses who were engaged in dry cleaning in the City of Chattanooga. They testified that the ordinary method for cleaning furs was to rinse them in pure gasoline and the method pursued by the defendant was the ordinary and correct method. But it was developed that this coat was thrown in a pile with other soiled clothes and a darkey, with some ten years' experience in cleaning, assorted the furs and silks from the wool and other garments. This fur coat was then thrown in with other silk articles and they were cleansed together. It is said that acid from the dyes used in coloring these silken articles may have injured the skin and accounts for the acid being present in the gasoline. On the other hand, it is shown that soon after the lady purchased the coat she wore it to a card party and some one turned over a glass or a vase of water which ran off of a table into a chair and formed a puddle. She sat in this water and the water soaked through the fur and formed a large spot on the lining of the color of ink. Perhaps the dye in the lining was responsible for the acid in the gasoline which is thought to have injured the skin.

Upon cross-examination these dyers testified that the method pursued by the defendant was not the method that they would have pursued had they been cleaning the coat. Mr. Chamberlain was asked:

"Q. . . . You saw the coat, I believe you say twice prior to today. Now what would you, as an experienced cleaning man, do if that coat had come to your plant? I mean what course would you take at your plant? A. I would examine it thoroughly.

"Q. Then you think some one in authority at your place would first examine that coat? A. Yes sir.

"Q. Would this be true: will you denominate this proper, for that coat to come in with all other goods, cotton, silk or otherwise, and be brought into the room, brought into your plant and placed on a table, and then carried from that table by a negro, who was taking

them to put them into the cleaning, and for him to do everything after that pile had been piled on the front table, carrying them back, without making any selection, and cleaning them, what would you say about that? A. No, garments should be sorted out.

"Q. How is that? A. Garments should be sorted out, that is the proper way of cleaning.

"Q. Just tell the court, Mr. Chamberlain, why, when garments are brought in from the wagon and piled up on a table together, why should those garments be sorted out before being put back to be cleaned? A. Well, materials of various kinds, the colors are usually separated, the colors of one denomination from the colors of another, white, and so forth, wools, silks.

"Q. So it is not proper to mix the different sorts of material and different colors together indiscriminately, is that your judgment? A. I should say that is the wrong method.".

Another witness, Mr. Clifford Mertins, says that if this coat had come to his plant he would have examined it and if he found any defects in it he would have an understanding with the customer that he would clean it and she would get it back at least like it was when it came in; that when goods came into his plant they were put in a pile and were sorted out immediately and those requiring a certain length of time to be cleaned or a certain color or anything like that would be placed in a pile. He was asked:

"Q. So you would not carry that pile, without knowing what was in it, back to have it cleaned together at the same time, would you? A. No, that would not be the process. That is not the way I would follow it out.

"Q. Yes, that is not what you would do? A. No, sir.

"Q. Is this not true, that heat will take the natural oil out of skins and furs? A. No sir, not necessarily. These coats are made with heat. The heat made that crinkle in here. Take a fur like this you can gloss that with a hot iron. Take a hot iron and gloss that, put a finish on it. Heat is used to put a finish on those things. As a matter of fact, the proper way to really, properly handle the coat is to steam it. But when you set in to steam a fur, you think it is ruined. You cannot give it to everybody to steam. I steam furs all the time, but I do it myself.

"Q. That is a damaged piece of goods, is it? A. It is damaged. It is a question of who damaged it though."

The different witnesses, who were themselves cleaners, showed that their method is different from the method pursued by the defendant. All of them admit that they at least would have assorted the articles, putting the furs to themselves, the silks to themselves, and the cottons and woolens to themselves. One of the witnesses says the proper way to clean a fur coat is to steam it. In this case the goods were not inspected other than by the negro who separated the woolens and left

the furs and silks of divers colors together, dumping them in and cleaning them together. Had the method detailed by these witnesses been followed, doubtless the coat would not have been injured. The defendant did not produce evidence sufficient to overturn the presumption which arose upon the delivery of the article in bad condition, and there is evidence to support the verdict of the lower court.

The judgment is affirmed.

Snodgrass and Thompson, JJ., concur.