**STEINER–LIFF IRON AND METAL CO.,**
**Plaintiff-Appellee,**

v.

**WOODMONT COUNTRY CLUB,**
**Defendant-Appellant.**

Supreme Court of Tennessee.

Feb. 7, 1972.

George B. McGugin, Nashville, for plaintiff-appellee.

Herbert R. Rich, Nashville, for defendant-appellant.

## OPINION

PURYEAR, Special Justice.

Plaintiff-appellee, to which we will hereinafter refer as plaintiff, filed this suit in General Sessions Court against defendant-appellant, to which we will hereinafter refer as defendant, to recover an amount under $3,000.00 for damage to plaintiff's automobile.

When the case was tried in General Sessions Court, that Court found in favor of defendant and dismissed the suit on May 13, 1970, from which the plaintiff appealed to Circuit Court where the case was tried de novo before the Circuit Judge without intervention of a jury.

In the warrant by which this suit was instituted plaintiff's cause of action is stated as follows: "A civil action brought by Steiner-Liff Iron & Metal Co. for damages to plaintiff's vehicle, which vehicle was delivered to the defendant, its agents, servants, or employees and was returned or redelivered in a damaged condition . . ."

In Circuit Court the defendant filed a written plea as follows:

"The defendant for plea says it does not owe the plaintiff as he has alleged in the General Sessions warrant.

And the defendant gives notice that it will, on the trial of the cause, rely upon the following defense, to wit:

That the plaintiff is bound by the provisions of a by-law to the Woodmont Country Club's constitution and would be precluded from making a recovery in this action. Said by-law states as follows:

'Member (sic) may park their own cars if desired. The Club will not be responsible for any damage to automobiles parked by the parking attendant.' "

In Circuit Court the case was tried upon a written stipulation of facts, which stipulation is quite brief and therefore, we quote it herein as follows:

"In this cause it is stipulated by and between the parties, as evidenced by the signatures of their attorneys hereto, as follows:

(1) This lawsuit arises out of an accident which occurred on July 4, 1969, on the grounds of the Woodmont Country Club in Nashville, Davidson County, Tennessee.

(2) It is a suit for property damage to the plaintiff's automobile brought within the three (3) year statutory period for the bringing of property damage lawsuits.

(3) The plaintiff's automobile is owned by Steiner-Liff Iron and Metal Company, a corporation, the president of which is Mr. Noah Liff. This automobile was

used by Mr. Liff for his business and personal use.

(4) Some time prior to July 4, 1969, Mr. Liff had loaned the automobile to Mr. James Creim, a personal friend and one of the executive employees of Steiner-Liff Iron and Metal Company. Mr. Creim had full authority to use the vehicle for any purpose and to permit its use by others with his (Creim) permission.

(5) On July 4, 1969, Mr. Creim permitted his wife to take the automobile to the Woodmont Country Club where she left the car at the front entrance of the Club expecting it to be parked by a Club employee. Shortly thereafter the automobile was taken ay an employee of the Country Club and parked on a lower parking lot on the Club grounds.

(6) Shortly thereafter the automobile rolled down a hill and struck a tree resulting in damage to the vehicle in the amount of $2,042.03.

(7) Both Mr. Liff and Mr. Creim are members of Woodmont Country Club.

(8) Woodmont Country Club is a private country club organized under the general welfare corporation laws of Tennessee. Its purpose is the recreation and social enjoyment of its membership and, in furtherance thereof, it maintains golfing, tennis, swimming, and food and beverage facilities.

Membership is by application which may be approved or disapproved by a Board of Directors. If approved, the member pays an initiation fee and monthly dues.

The Board of Directors are constitutionally charged, among other things, with making all rules governing the operation of the Club, and to take such action as it deems proper against any member for violation of the Club's rules, or by-laws, including the power of fine, suspension or expulsion. In a case of expulsion, however, a member has the right of appeal to the general membership.

(9) One of the by-laws to the Woodmont constitution provides as follows:

'Members may park their own cars if desired. The Club will not be responsible for any damage to automobiles parked by the parking attendant.'

Ordinarily a parking attendant is not provided and members park their own cars. On occasions when the Club expects heavy usage, a parking attendant is furnished and the members may avail themselves of the service. On this occasion, July 4, 1969, a parking attendant was on duty.

(10) Upon being elected to membership a new member receives a copy of the Club's constitution and by-laws.

(11) Mr. Liff and Mr. Creim had knowledge of the above set out by-laws.

(12) From time to time Woodmont Country Club members are reminded of the said by-laws by notice sent through the mail."

Actually, the record before us contains two written stipulations of facts, the first of which was filed on March 12, 1971 and the latter of which was filed on July 19, 1971, just ten days before the Circuit Court rendered its judgment.

Both stipulations are substantially the same in all material respects and the one which is quoted herein was filed on July 19, 1971.

Upon the foregoing pleadings and stipulations of facts, the Circuit Court rendered judgment in favor of plaintiff and against defendant in the amount of $2,042.03.

From the Circuit Court's judgment, the defendant has perfected an appeal to this Court and filed five assignments of error.

In the first assignment it is insisted that the trial Court erred in finding that the parking attendant was an agent of the defendant for the purpose of parking plaintiff's automobile.

The first stipulation, which was filed on March 12, 1971, contains the following language:

"On July 4, 1969, Mr. Creim's wife took the automobile to the Woodmont Country Club and left the car at the front entrance of the Club with the keys in the car. Shortly thereafter the automobile was taken by an employee of the Woodmont Country Club, part of whose duties on that date was to park automobiles; and he placed the car in a lower parking lot on the Club grounds."

As will be seen from paragraphs 5 and 9 of the stipulation filed on July 19, 1971, the above facts are stated in slightly different language.

These stipulations contain sufficient admissions of fact from which it can be concluded that the parking attendant was the agent of defendant and acting within the scope of his employment when he parked plaintiff's automobile.

Therefore, we find no merit in the first assignment of error and it is respectfully overruled.

In the second assignment, defendant insists that the trial Court erred in finding that the defendant's employee was guilty of negligence in parking the plaintiff's automobile because no facts establishing negligence were included in the stipulations and because the basic facts necessary to invoke the statutory bailment presumption provided in T.C.A. 24–515 do not appear in the stipulations.

In support of this assignment counsel for defendant says in his brief and argument that the stipulated facts in this case fail to establish that the automobile was delivered to defendant's employee in good condition.

As will be seen from the stipulations of facts, there is no evidence of any specific act of negligence on the part of defendant's employee and the plaintiff relies upon the presumption or inference of negligence which it insists arises pursuant to T.C.A. 24–515 which is as follows:

"24–515. *Negligence of bailee.*—In all actions by a bailor against a bailee for loss or damage to personal property, proof by the bailor that the property was delivered to the bailee in good condition and that it was not returned or redelivered according to the contract, or that it was returned or redelivered in a damaged condition, shall constitute prima facie evidence that the bailee was negligent, provided the loss or damage was not due to the inherent nature of the property bailed."

In Morton v. Martin Aviation Corporation (1959), 205 Tenn. 41, 325 S.W.2d 524, the Supreme Court said:

"The presumption created by this statute is one made by law which creates an inference of a fact which is prima facie correct and will sustain the burden of evidence unless and until conflicting facts on the point are shown."

(Supra, p. 50, 325 S.W.2d p. 528)

Long before enactment of the statute which is now codified as T.C.A. 24–515 and which enactment was originally accomplished by including it in the 1954 Code Supplement, the decisions in Tennessee and other States established a trend toward, and many of them actually authorized, creation of a presumption or an inference of negligence on the part of a bailee where property which was the subject of a bailment was delivered to bailee in good condition and redelivered to bailor in a damaged condition. See Roths Central Garage v. Holmes (1930), 10 Tenn.App. 500; Peerless Dry Cleaning Company v. Carmack (1928), 8 Tenn.App. 103.

The doctrine is analogous to res ipsa loquitur and is predicated upon the sound reason that since the bailee ordinarily should have within his peculiar knowledge such facts as will explain the circumstances causing the damage, then the bur-

538

den of proof should shift to him when the bailor establishes the precedent facts of delivery in good condition and redelivery in damaged condition.

The statute (T.C.A. 24–515) settled any controversy that may have existed about the precedent facts which must be proved in order to create a presumption or an inference of negligence and thereby place upon the bailee the duty of going forward with the proof and introducing evidence to prove that the damage was not caused by his negligence.

■ However, at the outset, the burden is upon the bailor to introduce evidence of the precedent facts before the burden of proof will shift to the bailee.

It is the contention of defendant that since there is no stipulation that the automobile in question here was delivered to defendant in good condition, the plaintiff failed to carry the initial burden of proving the precedent facts as required by the statute.

In C.J.S. we find the following:

"A presumption or inference of fact should not be drawn from premises which are uncertain, but the facts on which an inference may legitimately rest must, it is said, be established by direct evidence as if they were the very facts in issue."

Vol. 31A C.J.S. Evidence § 116, p. 201.
Also in Vol. 32A C.J.S. at pages 828 and 830, under the subject "Evidence" at Section 1044, we find the following:

"Where there is no precedent fact, there can be no inference; an inference cannot flow from the nonexistence of a fact, or from a complete absence of evidence as to the particular fact, but can be drawn only from the facts in evidence or from something which is known to be true."

Under the above quoted statement from Volume 31A C.J.S. at page 201 supra, several cases are cited, including Shockley v. Morristown Produce and Ice Company (1928), 158 Tenn. 148, 11 S.W.2d 900, wherein the Supreme Court quoted with approval from 10 R.C.L., 870 as follows:

" 'It is a well-established rule that a presumption can be legally indulged only when the facts from which the presumption arises are proved by direct evidence, and that one presumption cannot be deduced from another. To hold that a fact inferred or presumed at once becomes an established fact, for the purpose of serving as a base or a further inference or presumption, would be to spin out the chain of presumption into the regions of the barest conjecture.' "

(Supra, p. 161, 11 S.W.2d p. 904)

The same quotation from R.C.L. also appears in the opinion of the Court of Appeals in Nashville C. and St. L. Railway Co. v. Sutton (1937), 21 Tenn.App. 31, at page 44, 104 S.W.2d 834.

Morton v. Martin Aviation Corporation, supra, was a case involving bailment of an airplane by the owner thereof to a student pilot. The airplane was shown to have been delivered to bailee in good condition and returned to bailor in damaged condition after it had been wrecked.

The trial Court rendered judgment in favor of bailor for $3,000.00 and bailee appealed to the Court of Appeals, as a result of which that Court reversed and remanded because of what it conceived to be an erroneous instruction to the jury.

After certiorari had been granted the Supreme Court held that when the alleged erroneous instruction was considered in context with the entire charge, which contained a further instruction to the effect that proof of delivery to bailee "in an undamaged condition" was a condition precedent to creation of a presumption or inference of negligence, then no reversible error had been committed by the trial Court.

In reversing the Court of Appeals and affirming the trial Court, the Supreme Court made this significant statement:

"The Court of Appeals felt that in view of the fact that the plaintiff in bringing this lawsuit charged various acts of negligence on the part of the bailee that then the burden was on the plaintiff to prove these acts of negligence and could not rely upon the fact of the bailment alone and that thus the charge as quoted above was erroneous because it was in effect telling the jury that all the Aviation Corporation had to do was to show a letting of the property to Morton and then the burden was on Morton to show that he did not negligently damage this property. We think that if the charge of the court had merely charged the jury to this effect, that is, that all the corporation had to do was to show the letting and then the burden was on Morton to show a lack of negligence on his part that the conclusion of the Court of Appeals would be correct."

(Supra, 205 Tenn. p. 49, 325 S.W.2d p. 528)

Although neither of the stipulations filed in the record contains any statement to the effect that the automobile was in good condition when delivered to defendant's employee, it is suggested that since it was stipulated that while the automobile was parked in defendant's parking lot it rolled down a hill, struck a tree and was damaged to the extent of $2,042.03, this is tantamount to a stipulation that when it was delivered to defendant's employee it was in good condition, but was in a damaged condition when redelivered to Mrs. Creim, hence giving rise to the statutory presumption or inference of negligence.

However, we cannot agree with this contention. It is a matter of common knowledge to all men that an automobile is an intricate piece of machinery and a malfunction of one of its vital parts can cause an accident, therefore, it is just as probable that the automobile in question here rolled down the hill from its parked position because of a defective emergency brake or defective parking gear as it is that the parking attendant failed to apply the emergency brake or place the automobile in parking gear.

So, in a case of this kind, it is especially vital that good condition of the automobile be proved or stipulated as one of the precedent facts necessary to create a presumption or an inference of negligence.

For the reasons herein set forth, the second assignment of error is sustained, the judgment of the trial Court is reversed and the case dismissed at the cost of plaintiff.

Since the sustaining of this assignment disposes of the case, it is unnecessary for us to consider the remaining three assignments of error and the questions raised by these assignments are pretermitted. The plaintiff will pay all of the costs of this appeal.

DYER, C. J., and CHATTIN, HUMPHREYS and McCANLESS, JJ., concur.

## OPINION ON PETITION TO REHEAR

The plaintiff has filed a rather forceful but courteous petition to rehear, which is supported by a very able brief and supplement thereto.

However, with one exception, neither the petition nor brief raise any question which was not considered by the Court in reaching the conclusions set forth in its original opinion.

This exception is the insistence that the defense which was sustained by this Court was not raised in the trial Court but was raised on appeal in this Court for the first time.

Counsel for plaintiff relies upon the assumption that the defendant was limited to the special defense of relying upon its by-law quoted in its plea. The plea, which is quoted verbatim in the original opinion, is

a plea in bar with notice of a special defense and the giving of notice that it would rely upon this special defense did not constitute a waiver by defendant of reliance on the plea in bar which is contained in the first paragraph of said plea.

■ The record discloses that the plaintiff did not make any motion to require the defendant to plead its defenses specially and therefore, the defendant was not limited to a special defense.

On this subject, Caruther's History of a Lawsuit says:

"To avoid the danger of surprise, whatever it may be, in some of the states, the law requires that the general issues should be pleaded with notice of the special defenses to be relied on, and the defendant is not allowed to rely on anything of which such notice is not given. In Tennessee the rule is both ways; that is, the defendant may plead the general issue with or without notice of special defenses, as he chooses, and the result is the bar has adopted the practice generally of pleading without notice."

(Supra, Eighth Edition, Section 225, page 268)

■ Since this suit was filed on April 6, 1970, the new rules of civil procedure, which became effective on January 1, 1971, do not apply.

Counsel for plaintiff also insists that, by referring to briefs filed in the trial Court, it can be ascertained that the defendant in the trial Court, did not rely upon the defense which was sustained by this Court on appeal and has filed certain trial briefs as an appendix to the·petition to rehear.

■ Ordinarily, briefs filed in the trial Court do not become a part of the record on appeal unless made a part thereof by specific order of the Court. No such order of the trial Court appears in the record

and therefore, such briefs cannot be considered on appeal.

To consider, on appeal, matters which are not properly made a part of the record would establish a precarious precedent.

As we have already said, insofar as the record discloses, the defense which was sustained by this Court is included under the general issue plea and this is what we must look to in order to determine the issues raised upon trial in the Court below.

We review the case pursuant to Sections 27–303 and 27–304 T.C.A. and, according to 27–303, " . . . . the hearing of any issue of fact or of law in the appellate court shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the judgment or decree of the trial court, unless the preponderance of the evidence is otherwise."

Therefore, we find no merit in this insistence.

Counsel for plaintiff also argues that the rule which was laid down in the original opinion in this case would be extremely prejudicial to persons who may deliver articles to a repairman for repairs and could not meet the strict test of being "in good condition" when so delivered.

In order to avoid any misunderstanding of the interpretation herein placed upon Section 24–515 T.C.A., it should be emphasized that this Court has not held that said *statute and the presumption recognized therein are applicable only* to bailed articles which are in good condition at the time of bailment.

The very purpose of bailment may be to permit the repair of a damaged article which would not be in "good condition" at the time of bailment.

■ The words "in good condition" in the statute have reference to two elements stated in the statute, (a) "damaged condition" and (b) "inherent nature."

In respect to (a) "good condition" means free from the defects complained of which appeared at the time of redelivery to bailee, that is, that the defect or damage which was in existence at the time the bailee returned the chattel to the bailor was not in existence at the time the bailor entrusted the article to the bailee.

In respect to (b) "good condition" means free of inherent characteristics (including defects) which might reasonably have produced the damage complained of, that is free of defects which might produce damage "due to the inherent nature of the property bailed."

In the present case, a defective parking gear or defective parking brake would have prevented the vehicle from being in "good condition" in respect to (b).

Counsel for plaintiff also calls our attention to Dispeker v. New Southern Hotel Co. (1963), 213 Tenn. 378, 373 S.W.2d 904 and Scruggs v. Dennis et al. (1968), 222 Tenn. 714, 440 S.W.2d 20.

In addition to quoting other language used in those opinions, counsel for plaintiff quotes the following:

"It is true that in an action ex contractu, where the bailor relies on an ordinary contract of bailment without predicating his right of recovery upon the bailee's negligence, the bailor makes out a prima facie case of breach of contract when he shows delivery of the article to the bailee and the bailee's failure to return it in good condition on demand or as agreed on; and the bailee may escape liability only by affirmatively showing that his failure to redeliver was without his fault. Revenue Aero Club v. Alexandria Airport, (1951), 192 Va. 231, 64 S.E.2d 671; Giles v. Meyers, (1952), 62 Ohio Law Abst. 558, 107 N.E.2d 777, 779."

(Supra, 213 Tenn. p. 387, 373 S.W.2d p. 909)

It is to be noted that in both of these cases the plaintiff's case was predicated upon misdelivery rather than damage to the vehicle occurring while in custody of the bailee.

We did not overlook either of these cases in reaching the conclusions set forth in our original opinion and do not consider the opinion in this case as being contrary to the opinion in either of the above mentioned cases.

Furthermore, the words ". . . and the bailee's failure to return it in good condition. . . ." necessarily imply that the plaintiff was onerated with the burden of proving "good condition" of the bailed article upon delivery thereof to the bailee.

Roberts v. Ray (1959), 45 Tenn.App. 280, 322 S.W.2d 435, which is cited by plaintiff's counsel, is not controlling in the instant case. In that case, which was predicated upon the doctrine of res ipsa loquitur, the owner of the automobile which rolled downhill and damaged plaintiff's property was the person who parked said automobile. Therefore, regardless of whether the accident occurred as result of the owner's failure to properly park the automobile or to maintain the brakes and parking gear in safe condition, the inference of negligence on his part properly arose under the res ipsa doctrine.

The instant case is predicated upon the bailment theory and the essential fact of delivery to bailee in "good condition" which serves to give rise to the statutory inference or presumption has not been established.

For the foregoing reasons, the petition to rehear is respectfully denied.